PROVO STY, J.
The plaintiffs, 22 in number, are members of the defendant association, the Colored Screwmen’s Benevolent Association No. 1 of Louisiana, which is itself a member of, or affiliated with, or holds a charter from, the International Longshoreman’s Association as Local No. 237.
Under section 3 of the rules of the International Association, members of one local are not permitted to work within the territory under the jurisdiction of another local' without permission, under penalty of expulsion.
In February, 1912, the two locals of the same association at Gulfport, Miss., ordered a strike against certain ship agents and stevedores of that city, and requested the defendant association not to assist in breaking the strike; and the defendant association passed a resolution assessing a fine of $5 for a first offense and $25 for a second offense against any of its members who should “go to Gulfport and work while said Locals 352 and 795 are asking for recognition and regulation in handling cotton, without the consent of Locals 352 and 795.” On May 19, 1912, the plaintiffs went from New Orleans *896 to Gulfport, and there engaged in work for said ship agents and stevedores. On May 20. 1912, the Gulfport locals notified the defendant association of that fact, and requested protection, and at a regular meeting of the defendant association held that same day the plaintiffs were fined $5 and $25 each, and the president was instructed to so notify them, and to notify them further that, unless they desisted from their said work, they would be expelled. This notice was duly-served on the plaintiffs, but they paid no attention to it, and continued in their work. On May 28, 1912, the Gulfport locals prepared a regular charge against the plaintiffs before the defendant association for violation of the said section 3 of the rules of the International Association. At a regular meeting, on June 3, 1912, this charge was put before the association, for action to be taken upon it. The minutes of the meeting read:
“Brother J. W. Monroe was present to represent the members of Local 237 that were now at Gulfport working. He stated that they were at Gulfport working because the ship agents M. Gurry & Ladnder told me and the members of Local No. 237 that everything was satisfactory to the Locals 352 and 795.”,
The minutes further show that a motion was then made to impose the fines of $5 and $25 upon the plaintiffs, naming them all, and that this motion was unanimously carried. The matter came up again at the regular meeting of July 1, 1912, the minutes of which read:
“Brother J. W. Monroe spoke on the matter relative to the fine imposed upon him and other members of the local for going to Gulfport and working on May 20, 1912. He stated that it was true that they did go to Gulfport and did work, but it was satisfactory to the members of Locals Nos. 352 and 795 for the members of Local No. 237 to come to Gulfport and work, and he (Monroe) asked that the matter be investigated before the local forcing them to pay the fines which had been imposed.”
A committee of investigation was accordingly appointed; and this committee went to Gulfport (at the expense, by the way, of the defendant association), and made the investigation, and found and reported that the said work had been done not only without the consent but against the wishes of the Gulfport locals. Resolutions of the said locals to that effect accompanied the report. At this hearing in Gulfport the plaintiffs were duly represented; a number of them being present. The report is to the effect that there was a full hearing, and that evidence was regularly taken. This report was presented to the defendant association at its regular meeting of July 15, 1912, and was, on motion, adopted.
The plaintiffs refusing to pay the said fines, they were refused their working cards, without which, it seems, it is not possible for them to obtain work in their line of employment in the city of New Orleans; and they have brought the present suit, asking that a mandamus issue to the defendant association to give them their working cards.
Their contention is that they were condemned without a hearing; and that, moreover, any rule of the defendant association by which workmen of one state should be precluded from seeking employment in another state would be in violation of the federal Anti-Trust Act, and void, and any fine in enforcement of same would be equally void.
[1] In support of their contention of their having been condemned without a hearing, they show that under section 4 of article 30 of the by-laws and article 24 of the constitution of the defendant association they are entitled to a trial before the grievance committee of the association.
It is true that there is such a committee, ^nd that it is “the duty of said committee to investigate all grievances and report the result of their investigation to the association, at the next regular meeting for final dis *898 position,” but we think that the plaintiffs have had the full benefit of a hearing before a committee of their own choice, and that, under all the circumstances of the case, they have had all the hearing they can possibly be entitled to.
[2] And, besides, there can be and is no denial of the fact that the work they' did in Gulfport was without the consent of the locals of that city; and hence that the said section 3 of the rules of the International Association was violated, the penalty of which is expulsion. Of what possible' use, then, could any further hearing be to them? Their only contention in that connection is that the strike in Gulfport was ended; and that therefore they violated no rule of the association. But the said section 3 of the rule of the International Association is not confined to strikes, but reads:
“Any member who may allow himself to be employed at any work coming under the jurisdiction of another local without the' consent of the local having jurisdiction of the work, shall,” etc.
So that the plaintiffs violated this rule even if the strike was ended.
[3] On the question of whether the Gulf-port locals had already adjusted their differences with the ship agents and stevedores or were still “asking for recognition and regulation in handling cotton,” the judgment of the said investigating committee, rendered as it was after hearing and approved by the association, is conclusive upon the courts. 6 Cyc. 827.
[4] As to the said section 3 of the rules of the International Association being in violation of the Sherman Anti-Trust Act, the learned counsel of plaintiffs has not pointed out in what respect it is. The contention, if well founded, would render unlawful such associations as the defendant, the lawfulness of which is well recognized. Cyc. vo. Labor Unions; Longshore-Printing Co. v. Howell, 26 Or. 527, 38 Pac. 547, 28 L. R. A. 464, 46 Am. St. Rep. 640.
Judgment affirmed.
O’NIELL, J., takes no part.