Docket 149/545

JOHN J. WALSH, complainant,

*v.*

INTERNATIONAL ALLIANCE, &c., et al., defendants.

[Decided May 16th, 1944.]

*Mr. Warren Dixon,* for the complainant.

*Messrs. Milton, McNulty & Augelli (Mr. Thomas McNulty,* of counsel), for the defendants.

FIELDER, V. C.

The International Alliance of Theatrical Stage Employees and Moving Picture Machine Operators of the United States and Canada (hereinafter called International) is a trade union and one of its branches, Local 59, controls and exercises practically a monopoly over employment of stage employees in theatres in Hudson County. The complainant, Walsh, had been a member of the International and of the Local upward of thirty-three years. He had held the office of business manager of the Local several terms and in May, 1942, he was re-elected to that office by members of the Local for two years at a salary of $100 per week. He was brought to trial November 19th, 1942, on charges preferred against him, was adjudged guilty by a trial board and at a subsequent meeting of the Local was discharged from his office

and expelled from membership. He alleges that his discharge and expulsion were brought about through a conspiracy among certain members of the Local who are named as defendants herein, to bring him to trial on false charges; that he was forced to trial in disregard of the provisions of the constitution of the International, of the Local and of the by-laws of the Local and that the judgment against him was illegal and in violation of his rights as a member of the Local. He seeks reinstatement to the office of business manager and to membership in the Local and to recover from the Local his salary as business manager for the term for which he was elected. He also seeks money damages against the individual defendants and compensation from them or the Local for loss resulting from his deprivation of membership in the Local. Few of the essential facts on which this decision must rest are in serious dispute.

Ordinarily, when disciplined, a member of a voluntary association is bound by proceedings taken within the association in conformity with its constitution and by-laws to which he assented by becoming a member. *Walsche v. Sherlock,* 110 *N. J. Eq.* 223; *Cameron v. International Alliance, &c.,* 119 *N. J. Eq.* 577; *Mogelever v. Newark Newspaper Guild,* 124 *N. J. Eq.* 60; *Chew v. Manhattan Laundries, Inc.,* 134 *N. J. Eq.* 566. A voluntary association may discipline a member or expel him from membership, but must do so in accordance with the laws of the association. *Lo Bianco v. Cushing,* 117 *N. J. Eq.* 593; *affirmed,* 119 *N. J. Eq.* 377; *Fleming v. Moving Picture, &c.,* 16 *N. J. Mis. R.* 502; *affirmed,* 124 *N. J. Eq.* 269; *Chew v. Manhattan Laundries, Inc., supra.*

On the night of October 7th, 1942, a fracas in which Walsh and DeSavino (the latter one of the individual defendants herein) were participants, occurred on the stage of the Hudson Theatre just before the curtain went up. Charges and counter-charges of assault and battery were made and at a hearing before a police judge both parties waived examination and were held for the grand jury, which body has so far failed to indict either of them. On the 14th of the month two complaints or charges presented to the Local, were made

in writing against Walsh, the one sworn to by Royal Hancox (*Exhibit C-4*) and the other sworn to by DeSavino (*Exhibit C-5*), both members of the Local. *Exhibit C-4* charges that Walsh, a member and officer of the Local, while intoxicated assaulted DeSavino without provocation on October 7th at the Hudson Theatre, called DeSavino vile and filthy names and vilified his character. It states the names of witnesses and requests that Walsh be dealt with in accordance with the constitution and by-laws of the International and Local and that he be impeached. *Exhibit C-5* is in the same form as *Exhibit C-4*, making the same charges against Walsh, naming the same witnesses, contains the same request that Walsh be dealt with and further, that he be expelled from membership in the International and in the Local. The charges as made by *Exhibits C-4* and *C-5* complied in form with the requirements of the constitution of the Local and informed Walsh of the time, place and nature of the charges, the section or sections of the constitution alleged to have been violated and the names of all witnesses to the offense known to the accusers.

Another written complaint (*Exhibit C-6*) against Walsh was sworn to by Royal Hancox November 2d, 1942, charging that Walsh, being business manager of the Local, did on or about May 26th, 1938, and May 25th, 1942, and May 14th, 1940, in violation of a specified article and section of the constitution of the International and in violation of specified articles and sections of the constitution and by-laws of the Local—and there the charge ends abruptly, wholly failing to state or even refer to any act on the part of Walsh which was in violation of the specified provisions of the constitution and by-laws. That complaint states the names of two witnesses as having knowledge of the acts complained of and requests that Walsh be dealt with in accordance with the constitutions and by-laws of the International and the Local and be impeached in his office. It did not request that he be expelled from membership in the Local.

*Exhibit C-6* fails to comply with the provisions of the Local constitution relative to specification of charges and is inadequate in that it does not specify the nature of the

offense or violation charged. The articles and sections of the constitutions of the International and of the Local specified in the complaint are obviously such as Walsh could not have been guilty of violating, and the specified section of the Local's by-laws refers to at least nine different offenses which might be charged against a member and therefore the complaint failed to acquaint Walsh with any specific charge against him. It will hereinafter appear that the charge intended to be made against Walsh by *Exhibit C-6* was that he had received funds of the Local for his own use unlawfully or improperly.

The constitution of the Local provides for a "cognizance committee" to decide whether charges made against a member are cognizable or not. Walsh was given a hearing before that committee before he was formally served with charges and thereafter, on November 12th, copies of all three charges were received by Walsh together with notice that November 19th, at 12 o'clock midnight, had been fixed for his trial before the executive board of the Local, at the Local's meeting hall.

The constitution of the Local designates the executive board as the trial body to hear evidence on charges, to determine the guilt of the accused and to make recommendation as to the penalty to be imposed. The executive board consists of the president, the vice-president, the recording secretary, the business agent and three elected members. At the meeting in May, 1942, at which Walsh was elected business agent, the members of the Local had elected Rieley as president, Kuntze as vice-president, DeSavino as recording secretary and Allstadt, Burke and Wolff as members of the executive board. Prior to the date fixed for the executive board to hear the charges against Walsh, certain charges had been lodged with the Local against Kuntze, by reason whereof he was disqualified to sit as a member of that board. Shortly before the trial date Burke resigned as a member of the board and Richard Hancox (brother of the man who had lodged charges against Walsh) was elected in Burke's place and DeSavino was disqualified as a member of the executive board because he had preferred charges against Walsh. The mem-

bers of the executive board then qualified to sit as a trial body on the charges against Walsh were Rieley, Allstadt, Wolff and Richard Hancox. Walsh charges that the disqualification of Kuntze, the resignation of Burke and the election of Richard Hancox were part of a plan devised by the individual defendants herein to bring about his removal from office as business agent and to expel him from membership in the Local, but the evidence fails to support that charge.

The members of the executive board qualified to sit as a trial body convened November 19th at the hour and place stated in the notice to Walsh. That night the trial body sat to hear charges which had been made against other members of the Local, and after disposing of those charges proceeded to the charges against Walsh. He was then called before the trial body to plead to the charges against him. If he believed that Richard Hancox had been elected to membership on the executive board through a conspiracy against him, or if he believed Hancox would be prejudiced against him because two of the charges against him had been preferred by Hancox's brother, he had the right to challenge the trial body member, but he did not. A stenographic record was made of the proceedings on all charges then heard by the trial body and so much of that record as relates to Walsh's trial was received in evidence in this cause. From that record it appears that the proceedings, as might be expected in a trial court composed of members of the Local, were most informal but it also appears that the proceedings were fairly conducted and I cite from that record.

As soon as the charges against Walsh were taken up he requested an adjournment of six weeks to await determination on the assault and battery charges and counter-charges made by him and DeSavino, then pending before the grand jury, and he renewed that request several times during the trial, throughout all of which he was present. His request was denied by a tie vote of the members of the trial body and I cannot say that the denial was improper. I digress to say that after Walsh had received notice of trial, he called on the president of the International with Allstadt and Wolff (the two members of the trial body who subsequently voted

to grant him a postponement), with reference to (he testified) a matter other than his coming trial but he discussed with the president the subject of his trial and was advised by the president that granting a postponement was wholly within the discretion of the trial body. Because of his long membership in the Local and his own experience as a member of the executive board, he must have had knowledge of the procedure before that board as a trial board and he knew that a request for a postponement might not be granted. He should have been prepared to meet that eventuality and to present his defense.

On opening the trial, the presiding member of the trial body read to Walsh the defective charge as alleged by Royal Hancox in *Exhibit C-6* and stated to Walsh that such charge was based on three unauthorized checks of the Local cashed by Walsh. Production of those checks was the sole evidence offered in support of the charge. The two other charges of an unprovoked assault by Walsh on DeSavino were next read to Walsh and witnesses testified under oath in support thereof. Walsh was present during the entire hearing and was asked several times if he desired to examine the witnesses and if he had anything to say in denial of the three charges; his only reply was to press his request for an adjournment on the ground heretofore stated. Immediately after the conclusion of the hearing the trial body made a unanimous finding and report in writing to the Local stating therein that Walsh had been found guilty of all three charges preferred against him and recommending that he be expelled from the Local. The finding of guilt on the charge as contained in *Exhibit C-6* was unjustified not only because that charge was defective in form but also because there was no evidence before the trial body to support a charge that Walsh had received funds of the Local improperly, but I am of the opinion that the finding of guilt on the charges as contained in *Exhibits C-4* and *C-5* was supported by testimony before the trial body and in reaching that opinion I disregard an *ex parte* affidavit read in connection with those charges. Walsh was informed the night of the meeting by a member of the trial body that he had been found guilty of the charges made against him.

The report of the trial body was presented and considered at a regular meeting of the Local held December 2d, of which meeting Walsh had notice. The minutes of that meeting record that the chairman of the trial body proceeded with his report on the case of Walsh (and others), and that the action taken by the members of the Local on the report was as follows:

"On the case of Bus. Agt. John Walsh for misappropriation of local funds the trial board unanimously voted guilty and recommended that he be impeached from that office. Accepted with the unanimous vote.

"The report on the last two charges against Bus. Agt. John Walsh which were for conduct unbecoming a member, the trial board unanimously voted guilty and recommends that he be expelled from this local union. This recommendation was accepted by a unanimous rising vote, none opposed. Two members did not vote.

"This report by the president on motion duly made and sec. was accepted and sec'y to notify the gen. office of the action taken by this local union."

Although Walsh was tried and convicted illegally of "misappropriation of local funds" and the trial body's recommendation that he be expelled from the Local may have been based on its finding of guilt on that charge as well as on his guilt on the other charges, nevertheless at the meeting of the Local at which the report of the trial body was received and considered, the members of the Local dealt with each charge separately and reached a distinct decision on the misappropriation charge and another distinct decision on the assault charges. The determination of the Local that Walsh be impeached from his office as busines agent because of misappropriation of money was improper, but the determination of the Local on the assault charges that he be expelled from the Local, was justified on the testimony before the trial body and was within the powers of the membership of the Local. When Walsh ceased to be a member of the Local, his right to hold office therein terminated.

Under the constitution of the International and of the Local, Walsh had the right to appeal to the International president, and from his adverse determination to the general executive board of the parent body, and from the adverse

decision of that board to the International in convention· assembled. He did appeal to the International president who sustained the action of the Local but Walsh took no further appeal. Whether, as claimed by the defendants, he was bound by the constitution of the organization of which he had become a member, to exhaust his remedies within the organization or, as claimed by Walsh, the attempt to prosecute further appeals would have been futile, illusory and vain need not be decided, because I find that in the fracas with DeSavino Walsh was the aggressor and as I have said, I find that the Local was justified in adjudging Walsh guilty of the assault charges.

I doubt the right of this court to re-try a case of this nature for the purpose of determining the fact of complainant's guilt of the assault offense charged against him, when the trial in which he was convicted was fairly had according to the regulations of the association of which he was a member, unless it should appear from the evidence produced before the court that the finding of guilt was clearly unjustified. The testimony before me shows that the morning of the day of the fracas, officers of the International had appeared at a meeting of the Local and had seized books of the Local because of a petition signed by several members of the Local charging that Local money had been paid out without authority. Walsh testified that the petition had been instigated by DeSavino. Testimony indicates that Walsh had been drinking during that day and was in an intoxicated condition that night when he arrived at the Hudson Theatre where DeSavino was employed. He testified he went there to see the show from the stage, but instead of remaining at the side of the stage where he had entered five minutes before the curtain was due to go up, he crossed the stage to the place where DeSavino was stationed as electrician waiting for the performance to begin. Walsh did not explain why he approached DeSavino. He asserted that he said nothing to or made any threatening motion toward DeSavino and that the latter immediately seized an iron pipe and struck him (Walsh) one or more blows on the head, arms and body. The blow or blows caused severe wounds which required that Walsh be

taken to a hospital for treatment. His version of the assault was uncorroborated while from the testimony of four members of the Local (as well as DeSavino) who witnessed the altercation, it appears that when Walsh approached DeSavino he called the latter vile names, removed his hat and eyeglasses, struck at DeSavino who endeavored to push him away, and reached for his (Walsh's) back pocket as though to draw a revolver and that it was then DeSavino grabbed the piece of pipe which happened to be close at hand and struck Walsh with it in self defense. The substance of that testimony was given before the trial body and as I have said, I find that body was justified in finding Walsh guilty of the charges made against him by *Exhibits C-4* and *C-5.*

The bill of complaint will be dismissed.