### REIGEL v. HARRISON.
### No. 10204.

Circuit Court of Appeals, Sixth Circuit.
Aug. 12, 1946.

Writ of Certiorari Denied Jan. 6, 1947.

See 67 S.Ct. 493.

Murray Seasongood, of Cincinnati, Ohio (Murray Seasongood, of Cincinnati, Ohio, of counsel; Paxton & Seasongood, of Cincinnati, Ohio, on the brief), for appellant.

Robert S. Marx of Cincinnati, Ohio (Robert S. Marx, Frank E. Wood, and Leonard D. Slutz, all of Cincinnati, Ohio, on the brief; Nichols, Wood, Marx & Ginter, of Cincinnati, Ohio, of counsel), for appellees.

Before HICKS, SIMONS, and MARTIN, Circuit Judges.

MARTIN, Circuit Judge.

This appeal stems from a controversy within an organized labor union. The appellant, L. W. Reigel of Georgia, a Vice Grand President of the Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employees, filed his original complaint in the United States District Court for the Southern District of Ohio against the Brotherhood and against three Ohioans, individually and as officers of the Brotherhood, namely: George M. Harrison, Grand President; Phil E. Ziegler, Grand Secretary-Treasurer; and Robert Morgan, a Vice Grand President. Subsequently, on motion of appellant, the suit against the Brotherhood was dismissed.

Complaining of suspension from his office as Vice Grand President and as a member of the Brotherhood, Reigel sought injunc-

tive relief to accomplish his restoration. He prayed also for the allowance of costs, expenses and damages by reason of alleged wrongful acts of the Brotherhood and of the defendants individually. He asked recovery of exemplary damages against defendant Harrison. The district court dismissed the action.

From the findings of fact, below, it appears that the Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employees is an unincorporated labor union with approximately 265,000 members, whose respective residences embrace every state in the United States and many provinces of the Dominion of Canada. More than 6,000 members reside in Georgia. The constitution of the Brotherhood provides that its "sovereign body" shall be the Grand Lodge vested with "absolute and exclusive jurisdiction over all matters pertaining to the Brotherhood." The Grand Lodge consists of a grand president, a grand secretary-treasurer, and seven vice grand presidents, constituting the Grand Executive Council; a Board of Trustees, consisting of a chairman and four members; and delegates: all of whom are entitled to a vote on all matters coming before the sovereign body.

In the preamble to the constitution of the Brotherhood, it is declared that "the Grand Lodge, possessing original and exclusive jurisdiction, is the source of all true and lawful authority and is the legislative and judicial head of the Brotherhood", vested with full power and authority to enforce upon its membership a strict adherence to the "laws and regulations" as stipulated in its printed constitution.

The constitution of the Brotherhood provides that regular conventions of the Grand Lodge shall be held quadrennially; and, between such conventions, the delegates and alternates elected to the last preceding convention, if still members of the Brotherhood in good standing, shall constitute the delegate members of the Grand Lodge at any special session. All members and Grand Lodge officers are obligated not only by the constitution of the Brotherhood, but also by its ritual. Upon induction into office as a vice grand president, appellant took a strong ritual oath "in the presence of Almighty God" to obey the constitution and laws of the Brotherhood and all orders emanating from its proper offices when in conformity therewith; and solemnly promised and declared that he would not, under any circumstances, resort to or bring suit in any court or courts, federal, state or provincial, until after he had exhausted all his rights and had used all means at his command within and under the laws of the Brotherhood.

Moreover, article 5, section 2, of the constitution provides: "No officer, member or subordinate unit of this Brotherhood may resort to any Court of Law or Equity or other civil authority either as parties plaintiff or for the purpose of securing an opinion or decision in connection with any alleged grievance or wrong concerning any case in controversy arising within the organization or under its law, until such officer, member or subordinate unit first shall have exhausted all remedies by appeal or otherwise provided herein for the settlement and disposition of such alleged rights, grievances or wrongs."

The constitution of the Brotherhood constitutes the Board of Trustees, the Grand President and the Grand Secretary-Treasurer a finance committee, with general supervision over the finances, funds and property of the Brotherhood. The duty of auditing the accounts rests upon the Board of Trustees, which began on July 16, 1945, an examination and audit of the expense accounts of the appellant as a vice grand president. In response to the board's request in writing that he appear before it with reference to his expense accounts, appellant appeared and was examined by the board of trustees. On August 15, 1945, appellee Harrison, as grand president, was formally notified by the board that Reigel had submitted deceptive and fraudulent expense accounts and had received money for expenses not incurred in the discharge of his duties in service of the Brotherhood.

After receipt of the board's communication, Harrison, in his official capacity, notified appellant of his suspension as a member of the Brotherhood for violation of its constitution and laws and for conduct unbe-

coming an officer or member of the organization. This communication in writing contained specifications of the articles and sections of the constitution of the Brotherhood which had been violated and a complete and specific statement of the alleged misconduct. The notification of suspension concluded with the statement that a hearing would be granted Reigel, upon his request. The action of the grand president conformed to the authority vested in him by article 13, section 11(a), of the Brotherhood Constitution. Appellant did not request a hearing, however, but appealed from the action of the grand president to the Grand Executive Council of the Brotherhood. This body duly docketed the appeal and heard it on October 11 and October 12, 1945. Neither Grand President Harrison nor Ziegler, Grand Secretary-Treasurer, participated in the deliberations or decision of the Grand Executive Council. Appellant appeared in person in support of his appeal and was also represented by counsel. On October 13, 1945, the Grand Executive Council, with the exception of the appellee officers who disqualified themselves, voted unanimously to sustain the action of the grand president; and appellant was duly notified of this decision.

The Brotherhood Constitution, in article 13, section 11(b), provides that if the grand executive council sustains a suspension, it shall become permanent unless reversed by the next Grand Lodge convention. Any member of the Brotherhood feeling aggrieved by the decision of the council is given by section 15 of article 16, the right of appeal to the Grand Ldoge convention within sixty days after the decision of the council, with the proviso that the appeal should be filed with the grand secretary-treasurer, together with all papers, documents and records in evidence before the council at the time of the hearing. Section 16 of the same article provides that all cases of appeal from the decision of the council shall be referred to the Committee on Appeals at the next convention of the Grand Lodge.

In article 13, section 11(b), to which previous reference has been made, provision is made that, should the suspension of a member be not sustained, he shall be restored to good standing in the Brotherhood, with all rights and privileges due him as if he had never been suspended, and shall be reimbursed from the funds of the Grand Lodge for all legitimate expense incurred "in handling the matters of the suspension."

The district court found that, on October 31, 1945, Reigel, without having appealed to the Grand Lodge convention, commenced this action against the Brotherhood and the individual defendants heretofore named, and moved for an injunction to set aside the decision of the grand president and the affirmance thereof by the grand executive council, and to restore appellant to his membership and office in the Brotherhood. However, while the action was pending in the district court, Reigel did file, on December 4, 1945, an appeal in writing to the Grand Lodge convention from the decision of the grand executive council sustaining his suspension by the grand president. The district court found, further, that this appeal within the Brotherhood was duly received and acknowledged "and will be heard in due course by the Grand Lodge Convention of the Brotherhood in accordance with its constitution at the next meeting of the Grand Lodge to be held in Cincinnati, Ohio, in May 1947."

After filing his appeal within the Brotherhood, Reigel amended and supplemented his complaint in the district court and dismissed the Brotherhood as a party defendant. He averred that he had filed his appeal to the Grand Lodge convention.

The district court expressly found: "The Grand Lodge is so constituted as to insure the plaintiff, Reigel, that his appeal will be heard by a representative body which has the power to give plaintiff full and complete relief if his suspension be not sustained. The delegates to said convention have not been elected and the provision for their election and qualification guarantees that they will be thoroughly representative of the entire membership of the Brotherhood. (Article 6 and succeeding sections.)"

The findings of fact of the district court were thus concluded: "Article 13 of the Brotherhood constitution empowers the Grand President to exercise general supervision over all the affairs of the Brother-

hood (Section 1); provides that he shall enforce strict observance of the constitution, laws, rules and regulations of the Brotherhood (Section 2); provides that he shall call to account any member of the Brotherhood violating the same (Section 3); and, further, provides that he shall have sole power and authority to interpret the constitution and laws subject to the Grand Executive Council (Section 4.)"

All the findings of the district court are supported by substantial evidence, and certainly cannot be said to be clearly erroneous. Wherefore, the findings are accepted here. For more complete understanding of the controversy, however, it may be well to add a bit more detail of the factual background disclosed by the record.

As early as August, 1936, when appellant was serving his first term as a vice grand president, personal differences arose between him and the appellee, Grand President Harrison. At the hearing before the grand executive council, Reigel objected to the introduction of Harrison's exhibits evidencing their personal differences. The dispute concerned chiefly the authority of Harrison as Grand President as opposed to that of Reigel as Vice Grand President. Harrison steadfastly maintained and informed Reigel that the latter, by the constitution, was required to work under the immediate supervision of the former as grand president. Harrison asserted before the board of trustees, and at the hearing before the grand executive council, that rumors had prevailed throughout the Southeast and at the headquarters of the Brotherhood in Cincinnati that Reigel had been making an unusual number of trips to Spartanburg, South Carolina, on personal business and had been charging the Brotherhood with the expenses of these trips. He stated that he had told Reigel that he hoped these rumors were not true; but that, if true, the incorrect practices must cease at once. A letter had been received by Harrison complaining of the activities of Reigel in Spartanburg. The statement was made in this letter that Reigel's conduct had not been that of an ordinary gentleman, much less that of a vice grand president of a great organization. The grand president was requested to remove Reigel from office. Harrison declared at the council hearing that the rumors had persisted and that other letters had come to him from the southeastern territory demanding that something be done to stop the irregular activities of Reigel. Harrison wrote to Reigel on February 3, 1945, stating: "Hereafter you will be given specific assignments of work to be done by you and you will not engage in any other activities in behalf of the Grand Lodge." On the same date, he wrote in another letter to Reigel that the latter's supervision over grand lodge organizers would be thereafter exercised directly by the grand president's office.

Harrison stated at the hearing that, from investigation made by him, the grand secretary-treasurer, and their staff, the evidence was convincing that funds of the Brotherhood had been paid to Reigel on presentation by him of improper and fraudulent accounts.

The board of trustees was informed, in a letter dated July 14, 1945, from Harrison and Ziegler, of their extensive investigation. The setting of a date was requested for presentation to the board of the detailed results of the investigation by the officers. The board of trustees convened on July 16, 1945, to make its required regular semi-annual audit and examination of the Grand Lodge accounts. Special attention was given to the expense accounts of Reigel.

Harrison and Ziegler filed with the board Reigel's expense accounts, together with a nineteen-page statement, which, according to Harrison, represented what he and Ziegler "had discovered in some seven or eight months of examination of the activities of Brother Reigel."

In the course of investigation by the board of trustees, Harrison and Ziegler appeared before it several times. Reigel was requested to appear before the board, and did so on July 30, 1945. Reigel was informed by a member of the board that no charges against him had been prepared and that no thought of such was in mind; and that the trustees were trying merely to get an explanation of things not clear to them. Reigel was asked to explain why his ex-

pense accounts repeatedly showed him to be in one city while documents accompanying them and other evidence established that he was actually in Spartanburg at the time. His explanation of his handling of his expense accounts was not satisfactory to the board. Upon completion of their investigation, the trustees embodied their findings in a report to Grand President Harrison. A board member declared before the grand executive council that the board had inspected the Grand Lodge files as to assignments, the files of local lodges, files concerning mediation, arbitration and emergency panel cases, and other files. They had also made a complete check of Pullman stubs, cash-fare receipts, telegrams, hotel bills and other papers and documents submitted by Reigel with his expense accounts. In its letter to the grand president, the board of trustees stated that the facts disclosed by its examination of Reigel's expense accounts for the current audit period (January 1 to June 30, 1945) and his complete failure to give satisfactory explanations of the numerous irregularities called to his attention had caused the board to extend its investigation to cover the years 1942, 1943, and 1944; and that, therefore, the report covered the full period from January 1, 1942, to June 30, 1945.

In his letter suspending Reigel, of date August 15, 1945, Grand President Harrison set forth five grounds for the suspension, three of which dealt with matters covered by the report of the board of trustees. These three grounds were: (1) That Reigel had been absent from his position and duties on personal business in Spartanburg without the knowledge and permission of the grand president; (2) that he had submitted to the Grand Lodge untrue expense accounts and reports concealing his actual and true movements; and (3) that he had on specific occasions deferred, neglected and failed to do the work for which he was paid a salary of $8,500 and traveling expenses. The additional grounds for suspension stated were that Reigel had made intemperate attacks upon and untrue accusations against the grand president before a meeting of the officers of the Brotherhood; and that he had sought by abuse of the grand president, the grand secretary-treas-

urer, and the members of the board of trustees and by threats of personal violence to the grand president and the grand secretary-treasurer to prevent or subvert the investigations and exposures of his misconduct.

Despite Harrison's statement in his letter to Reigel that a hearing would be granted him upon request, Reigel exercised his right as a suspended member under article 13, section 11(b), to appeal to the grand executive council. Upon this appeal, Reigel's sole contention was that Harrison had exceeded his authority in suspending him under article 13, section 11(a), and had violated article 19.

The first section of article 19 provides that all "charges preferred against Grand Lodge officers shall be submitted in writing, and shall be for violation of the laws of the Brotherhood or for conduct unbecoming a Grand Lodge officer"; and prescribes procedural requirements. Section 2 of the article provides: "Upon receipt of the charges, the Grand President shall immediately take the necessary steps to form a Board of Advocates of five (5) members, which shall arrange for and conduct a trial of the Grand Lodge officer or officers against whom the charges have been filed." The method of choosing the board of advocates is prescribed. The last sentence of the section provides: "All decisions of the Board of Advocates shall be final, pending appeal to the next Convention, and in so far as official acts are concerned, they are amenable only to the Grand Lodge Convention."

At the hearing before the grand executive council, a vice grand president presided. The acting chairman of the board of trustees introduced the evidence disclosed by the board's investigation. Grand President Harrison and his assistant counsel presented other evidence of misconduct on the part of Reigel, and several witnesses testified against Reigel. After evidence had been received, the grand president stated that he was justified in suspending Reigel, inasmuch as Harrison was the chief executive and administrative officer of the Brotherhood charged with general supervision of its affairs and

that he was under mandate to see that the constitution and laws of the Brotherhood were enforced and to call to account any member violating them, or engaging in conduct unbecoming a member. He pointed out that, under article 13, section 4, he is vested with sole power and authority to interpret the constitution and laws of the Brotherhood, subject to the appellate review of the grand executive council. He declared that article 13, section 11(a), is intended to apply to all members, with no exception of grand lodge officers; and that article 19 had been adopted for the purpose of providing some means whereby members and grand lodge officers can proceed against grand lodge officers. He added that the only other procedure available to the rank and file and to officers other than the grand president is through the referendum and recall. He asserted, moreover, that the convention which incorporated article 19 into the constitution of the Brotherhood did not intend that the grand president should permit a derelict officer to remain in office and continue fraudulent practices until a time when a board of advocates could be set up to hear and pass upon the charges made against him.

Reigel was present in person and was represented by counsel at the hearing. His insistence was that the basis of his appeal rested upon the proposition that the grand president should have proceeded against him under article 19, instead of article 13 of the Brotherhood's Constitution. Reviewing the legislative history of article 19, he argued that it had been adopted for the reason that certain grand lodge officers had been suspended without due process of law; and that article 13, section 11(a), was inapplicable to his case, inasmuch as it did not apply to grand lodge officers, but only to officers of local lodges or system boards and to members of such.

Reigel reiterated his protest against the ruling of the grand executive council that evidence of his alleged misconduct would be received. He did not attempt to meet the allegations against him, but stated: "We did not come here prepared to try those charges and when the Grand President complies with article 19 and a board of appeals is set up, * * * we will be prepared to face those charges and we will be prepared to show that the charges were based on a lot of misstatements of fact, suppositions, assumptions and not on real facts."

At the conclusion of the hearing of a motion to dismiss, the district judge stated that the case would be dismissed "on the one ground that Reigel, having chosen the Convention to settle the dispute, has relieved this Court of further responsibility." Prevailing counsel were directed to prepare necessary findings of fact and conclusions of law. The conclusions of law filed by the court were in substance: (1) That, not having exhausted his available remedies within the Brotherhood to redress the grievances of which he complained, the plaintiff Reigel is not entitled to maintain his court action; (2) that, until the grand lodge convention has had an opportunity to hear and determine the appeal of the plaintiff, his complaint is premature and must be dismissed; (3) that inasmuch as the grand lodge convention has power to grant complete redress and relief, the plaintiff, by filing an appeal to that constituted authority, has elected to pursue and exhaust his remedies in the Brotherhood and is thereby precluded from proceeding in the United States District Court to try the identical controversy which he had appealed to the next grand lodge convention of his union; (4) and that, although the defendant had requested the court to make further findings of fact and conclusions of law upon other grounds urged in their motions and answers and although the other grounds urged in support of the motion for dismissal have some merit, the court was not passing upon them for the reason that the findings of fact and conclusions of law made are deemed controlling.

Appellant insists that he has been deprived of his elective office in the Brotherhood in a manner not in consonance with due process of law. We are not impressed with the argument. His contention seems to rest upon alleged erroneous procedure by constituted officials within the Brotherhood. Whether those who made the charges against him chose the appropriate course, we need not decide. Appellant was at least

given the opportunity to be heard and to defend himself against the charges of dishonesty levelled against him. As found by the district court, Reigel has not exhausted his remedies within the Brotherhood; and, this being true, he is not entitled to maintain this court action. The decision of the district court was in conformity with the controlling law—that of Ohio, which is consistent with the general law.

In International Union of Steam & Operating Engineers et al. v. Owens, 1928, 119 Ohio St. 94, 98, 99, 162 N.E. 386, 388, the Supreme Court of Ohio said: "It is a well-settled principle of law, recognized by the courts of this state and by the courts of other states, that the members of a fraternal association by adopting a constitution and by-laws and providing reasonable rules and regulations for settling their own disputes, and by establishing their own tribunals of original, intermediate, and appellate jurisdiction, become bound thereby, provided such constitution, by-laws, rules, and regulations do not contravene the laws of the state. It is also well settled that the members of such an association must conform to the reasonable rules and regulations thereof and must exhaust all remedies within the association and before such regularly constituted tribunals." Judge Allen, now a member of this court but then on the Supreme Court of Ohio, concurred in the opinion.

The decision of the district court is regarded as in conformity, also, with Myers et al. v. Jenkins, Adm'r, 63 Ohio St. 101, 57 N.E. 1089, 81 Am.St.Rep. 613. See especially the fourth syllabus of that authority, and that portion of the opinion at page 121 distinguishing Baltimore & O. R. R. Co. v. Stankard, 56 Ohio St. 224, 46 N.E. 577, 49 L.R.A. 381, 60 Am.St.Rep. 745, cited by appellant. In the instant case, the constitution of the Brotherhood, while requiring that a member must first exhaust his remedies as provided by it, does not prevent him from bringing a court action after he has done so.

Decisions of some of the inferior courts of Ohio shed light upon the subject, and indicate further that the district judge adopted the correct view of the Ohio law. See Hahn v. Elliott, 28 O.L.A. 353; Ward v. Campbell, Com.Pl., 1 Ohio Supp. 192; Boblitt v. Cleveland, C., C., etc., R. Co., 73 Ohio App. 339, 56 N.E.2d 348; Mace v. Carpenters, etc., of America, 31 Ohio N.P.,N.S., 17. In the last cited case, it was held that membership in a trade union is in the nature of a contract, under which each member agrees to be governed by its constitution and rules; and where, under such rules, complaints of an individual member against injustices of the association officers are required to be tried before a trial board of the association and an appeal taken within the association before recourse to civil courts, the latter tribunals are without jurisdiction in such cases until the remedies afforded by the constitution of the association have been exhausted. Pfoh v. Whitney, Ohio App., 62 N.E.2d 744, stressed by appellant, is plainly differentiable on its facts, and its obiter dicta, moreover, are not binding in the light of the Ohio decisions which have been cited.

The applicable principle in the instant controversy is analogous to a long-settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedies have been exhausted. Myers v. Bethlehem Corp., 303 U.S. 41, 50, 58 S.Ct. 459, 82 L.Ed. 638; Macauley v. Waterman Steamship Corporation, 66 S.Ct. 712.

It has been held by the Court of Appeals of the District of Columbia that a member and officer of a trade union, before becoming entitled to relief in equity, must first exhaust remedies within the organization as provided by its constitution and general laws. Fish v. Huddell, 60 App. D.C. 263, 51 F.2d 319.

In view of the ground upon which our decision is rested, discussion of the other defensive propositions presented by appellees is unnecessary.

The judgment of the district court is affirmed.