TAXICAB DRIVERS' LOCAL UNION NO. 889, a voluntary association; International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, a voluntary association; Gloyd Davidson, individually, and as Business Representative of Taxicab Drivers' Local Union No. 889; and Joseph Maroof, individually, and as President and Member of the Executive Board of Taxicab Drivers' Local Union No. 889, Plaintiffs in Error,

v.

H. H. PITTMAN, Defendant in Error.

No. 37020.

Supreme Court of Oklahoma.

Oct. 22, 1957.

Rehearing Denied Feb. 25, 1958.

Mullinax & Well, by Houston Clinton, Jr. and L. N. D. Wells, Jr., Dallas, Tex., Schwoerke & Schwoerke, by C. W. Schwoerke, Oklahoma City, for plaintiffs in error.

Johnson, Gordon & Cotter, Everett E. Cotter, Oklahoma City, for defendant in error.

Clark Nichols, Roy L. Sullivan, Edward E. Soule, John H. Cantrell, V. P. Crowe, Oklahoma City, Floyd L. Rheam, Tulsa, amici curiae.

PER CURIAM.

This action arose out of a controversy between certain members of Local Union No. 889 and the officers of that union. The case was consolidated for trial with those of other members of the union which also arose out of this same controversy. The facts in each case are enough different, however, to require separate treatment on appeal. For a more complete statement of the facts and history of the controversy, attention is directed to Taxicab Drivers' Local Union No. 889 v. Pittman, Okl., 322 P.2d 159. Reference to the various parties will be by their trial court designation which is the reverse of their appellate position.

On June 5, 1952, the plaintiff signed a letter and petition to the International Union which contained certain accusations against the officers and business agent of the Local Union of the International and which requested an investigation of these officials

and their management of the Local Union. Plaintiff was a member of both unions. The petition characterized the actions of these local officers as "nefarious," and the particularizations were approximately 23 specific "irregularities," which, if true, were of such serious nature as would certainly have justified the officers' removal from office and expulsion from the union. For example, to specify only a few of the "irregularities" transmitted to the International by this letter, the business agent, the defendant Gloyd Davidson, was accused of incompetency, neglect of duty, making misleading statements in open meeting, violating his oath of office, failure to perform his duties, blocking an organizational drive, fostering a company union, failure to file charges against a member when justified, disloyalty to the union, and failure to investigate and qualify members for sick benefits. Pursuant to the request, the International sent a representative, Mr. Mandoiza, to Oklahoma City to investigate the management of the Local Union. His investigation required several days and culminated in a compulsory meeting of the Local at which he requested a vote of confidence to help him determine the sentiment of the membership toward the officers. The members appeared to be equally divided. Mandoiza informed the members that he would send a report to the International, but he did not reveal the nature of his report. The International apparently took no action against the officers of the Local Union.

Thereafter, on November 12, 1952, Gloyd Davidson filed charges with the Local Union against the plaintiff, alleging violation by plaintiff of certain provisions of the Union Constitution making it an offense to abuse fellow members and officers by written or oral communications. Written notice of the charge was served on the plaintiff the same day notifying him that trial would be held November 24th. Shortly after this notice was served plaintiff and others similarly charged initiated an action in the District Court of Oklahoma County to enjoin the trial. The union trial was thereupon postponed. At this injunction hearing the union officers, who were also the trial board, agreed to disqualify from hearing the plaintiff's case at his request. The injunction was denied. Subsequently, on December 4, a second notice was served on plaintiff informing him that the union trial had been reset for December 8, 1952. When plaintiff arrived at the appointed place on the trial date (after unsuccessfully attempting for a second time to enjoin the trial), Mr. Maroof, President of Local Union, was just impaneling the newly selected trial board whom he had appointed.

Upon appearing before the Trial Board the plaintiff requested a continuance for ten days on the ground that he had not received the proper notice. The Board held a conference and denied this request. The plaintiff's case was then called for trial. Only those directly concerned were present: Mr. Davidson, the members of the Board, the plaintiff, and the witnesses as they were called. The trial opened with a reading of the charge to which the plaintiff entered his plea, whereupon the prosecuting witness made his statement and then called six witnesses to prove his case. When he concluded, the plaintiff called some seven witnesses in his own behalf. Concerning the charge, the plaintiff admitted to the Trial Board that he had signed the letter and petition. In the trial of this case in the District Court he also stated:

"I read the complaint before I signed it and I saw some complaints in there that I could swear to and a lot that I couldn't, and I signed it."

During the course of plaintiff's case he asked that Mr. Maroof be called as a witness. Overnight one of the members of the board contacted Maroof and notified him of the plaintiff's request, but Maroof refused to be a witness, claiming that he would hurt the plaintiff as much as he could help him. It does not appear that the plaintiff made any effort to subpoena witnesses in the manner provided by the Union Constitution. When the plaintiff had no

more witnesses to present, the Board concluded his trial. The trial lasted more than three days. The union tribunal found the plaintiff guilty and imposed a penalty of a fine of $200, and suspension from union activities for one year. Upon his plea for leniency it reconsidered and suspended $100 of the fine during the plaintiff's good behavior. Within due time the plaintiff filed an appeal to the International and requested that his fine be waived pending his appeal. The Union Constitution provides that waiver of the fine is an act solely within the discretion of the International President. On January 2, 1953, the next dues-paying date after the trial, the plaintiff tendered the usual dues, but refused to pay the fine, contending that it had been waived even though he had not received any information to that effect. The dues were refused unless the fine was also paid. On January 8th the plaintiff received written notice of his suspension from the Union. On the same date, at the request of the Union, he was also suspended from his job in compliance with the terms of the Union's contract with his employer which required that all employees be in good standing with the Union. The International President waived the plaintiff's fine on January 17th, but the Local Union did not learn of this action until January 22nd at the appeal hearing. After learning of the waiver, the plaintiff did not re-tender his dues in an effort to regain his good standing with the Union pending the outcome of his appeal. The Appeal Board heard the appeal on January 22, 1953, and sent its report to the International Union which notified the plaintiff by letter, dated March 9, 1953, that it affirmed the Local Union, but modified the penalty to a fine of $100. The plaintiff has not been employed since his suspension, and his actual damage is based on this circumstance. The jury returned a verdict for his actual damages and for exemplary damages upon which the trial court entered judgment after ordering a remittitur of one-half of the exemplary damages.

 Without doubt, an organization such as this defendant has authority to establish rules which permit disciplinary measures against members who violate their reasonable provisions. Dangel & Shriber, Labor Unions, Sec. 171. For this reason courts will not interfere with the internal discipline of such associations except where the conduct for which discipline is attempted is not or cannot reasonably be made a punishable offense, or where the procedure taken to punish is so lacking in fairness as to render the decision void. The plaintiff maintains that the last exception is applicable in this case. Generally, the public courts look with favor on the settlement of such controversies within the affected organization, and trials of charges within such organizations do not have to conform to the same rigid standards as are required in the public courts. If the procedure adopted or required by the rules of the association conforms to the basic notions of justice which all recognize as essential to a fair trial, the result will not be disturbed so long as the conviction has some support in the evidence offered. In other words, if the organization does not act arbitrarily or in bad faith and conforms to its reasonable rules and modes of procedure, giving the accused a reasonable opportunity to defend himself, its internal discipline must be observed by those who voluntarily assented thereto when becoming members of the association. See Annotation 21 A.L.R.2d 1397. In the instant case, from our examination of the record, we are convinced that the plaintiff received a fair trial within the requirements of his Union Constitution and these general principles of law. Reigel v. Harrison, 6 Cir., 157 F.2d 140; Walsh v. International Alliance, etc., 37 A.2d 667, 22 N.J.Misc. 161.

 The charge upon which the disciplinary proceeding was initiated was in writing and specifically informed the plaintiff of the particular section of the constitution he was accused of violating. No complaint is made that the charge was insufficient in form or substance, and we

believe none could be made. However, it is contended that insufficient notice of trial was provided. We do not agree. The union rules provide that the trial should "not be less than ten days from the date the charges are served upon the accused." The charge and notice were served on plaintiff precisely ten days prior to the date originally set for trial. When the district court hearing in the action seeking injunction was concluded, the plaintiff's trial was promptly reset and four days' notice of that date was given plaintiff. The Union Constitution provision was not violated, and the action in resetting the trial on four days' notice does not seem to us to be unreasonable since plaintiff had ample opportunity to prepare his defense.

At the insistence of the plaintiff, the members of the executive board of the Local Union disqualified themselves as members of the Trial Board in his case. The Union Constitution provides that the Local Union President shall appoint a substitute whenever the accused or the accuser is a member of the Board, but it makes no provision for the situation where all members of the Board disqualify. Nevertheless, plaintiff does not contend that the Trial Board was not properly constituted or was without authority to act. On the contrary, he insists that the constitutional provisions were sufficient to authorize Maroof to appoint a board, thus creating it as an agency of Local Union. Furthermore, he neither objected to the Board nor to any individual member of the Board. Therefore, inasmuch as this Trial Board was reconstituted at his request, we do not believe he can raise any valid objection to its organization. Monroe v. Colored Screwmen's Ben. Assn., 135 La. 893, 66 So. 260.

The trial itself followed the usual pattern established in the public courts. The accused was allowed to cross-examine all witnesses, including Davidson. He was also allowed to present all testimony he had available. The Trial Board made no effort to limit him in any manner. Plaintiff complains that Maroof would not appear and testify, but the plaintiff made no effort to secure the attendance of witnesses in the manner prescribed by the constitutional procedure. In addition, he stated at the trial that he had no notion what the testimony of Maroof would be. The length of the trial itself would suggest that ample consideration was given to plaintiff, and that he took advantage of the occasion. His failure to secure the testimony of Maroof was chargeable to the plaintiff.

▊ In the trial of this case the parties made no effort to establish the substance of the testimony offered in the union trial other than the plaintiff's testimony concerning the evidence offered and his further statement that no witness said anything against him. If true, this latter fact begs the question. The issue in the union trial was the truthfulness of the libelous accusations made against Davidson which the plaintiff admitted signing. He was not being tried for any other conduct. In his testimony plaintiff stated that Davidson admitted that four of the 23 "irregularities" were true, but he was able to specifically designate only two of the items in the petition as having been admitted and neither of these were among those defamatory statements concerning Davidson personally. In view of the character of the language employed in this communication and Davidson's denial of the truth of the matters charged against him in his testimony before the Trial Board, it seems to us that the burden was then upon this plaintiff to establish the truth of the statements or that he was privileged to make them. Otherwise, certainly the communication was abusive, and there was sufficient justification in the evidence for the Trial Board to return a verdict of guilty. This court will not weigh the evidence presented to the union tribunal or substitute its judgment for that of the association. Ames v. Dubinsky, Sup., 70 N.Y.S.2d. 706.

It is also suggested that the Trial Board was prejudiced and was committed to a finding of guilty prior to the trial. We find nothing in the record to support such a conclusion. It was established that Ma-

roof expressed an opinion concerning the guilt of the plaintiff and his possible punishment at some time after the charge was filed, but before he disqualified and appointed a new board to hear the charge. This opinion, however, is in no way connected to the trial board that eventually heard the case except from the fact that Maroof appointed the members of the board. Such a tenuous connection, standing alone, can hardly be justification for the conclusion that the new board was prejudiced or precommitted to a verdict of guilty. The manner of their appointment to the Trial Board certainly shows no effort to select a prejudiced board, for it was testified that Maroof called them only the night before the trial to ask them to serve and that he did not discuss the matter with them otherwise. It was also admitted by the plaintiff that some of the members of the board were complete strangers to him, one being from out of town, and that he knew of no reason he could state that would show prejudice or disqualification of the members of the board. Again we note that he made no effort to challenge any member of the Trial Board before proceeding with his trial. It was plaintiff's "suspicions" upon which he based his claim that the board was not fair. His suspicions do not amount to proof. Prejudice is not presumed.

Thus we are convinced from our examination of the record that this plaintiff was properly charged, tried, and convicted by the Local Union as authorized by the Union Constitution for the offense of abuse of fellow members by a written communication.

■■ The Union Constitution provides that a fine must be paid pending an appeal; that an appeal must be taken within 15 days of the date of the tribunal decision; that upon deposit of the fine the member shall continue in the Union with full rights and privileges; that, in the event of noncompliance, the member shall stand suspended from all privileges of the Brotherhood until he complies with the decision. The plaintiff admitted in his testimony that the secretary of the Local Union was

required to collect the fine on January 2, 1953, if it were a lawful charge. The Union's contract with plaintiff's employer provides that the union officers may demand the suspension from work without pay of any member who fails to maintain his good standing with the Union. Inasmuch as we have determined that the penalty was lawfully imposed by the Local Union, the plaintiff has no complaint, and the union officers were justified in their action in causing him to be suspended from his job until he regained his good standing with the association. At the time the defendants demanded his suspension from work, he had not paid the fine, the fine had not been waived by the International President, and more than 15 days had expired since the penalty was imposed. The trial court was of the opinion and instructed the jury that the plaintiff had a "reasonable time" in which to pay the fine. This conclusion was erroneous. The plaintiff's rights were those created by his contract with the Union. When the fine was eventually waived, if the plaintiff had re-tendered his dues, he would have been authorized to continue in his employment pending the outcome of the appeal, but he did not re-tender his dues or make any other effort to resume his job. Plaintiff has the right to dispose of his labor; but his right to work as a cab driver was limited by his contract with his Union and by its contract with his employer. His action for damages for the alleged wrongful interference with his job by these defendants depends upon a determination that their conduct was unjustified. Based on their contractual rights, the interference with the plaintiff's job was not wrongful and the defendants are not liable for causing his suspension where, as here, the imposition of the penalty which he refused to pay was not unlawful. DeMille v. American Fed. of Radio Artists, 31 Cal.2d 139, 187 P.2d 769, 175 A.L.R. 382. The evidence fails to support the judgment.

The judgment is reversed.

WELCH, C. J., CORN, V. C. J., and HALLEY, JOHNSON, WILLIAMS,

BLACKBIRD, JACKSON and CARLILE, JJ., concur.

The Court acknowledges the aid of the Supreme Court Commission in the preparation of this opinion. After a tentative opinion was there written, the cause was assigned to a Justice of this Court. Thereafter, upon report and consideration in conference, the foregoing opinion was adopted by the Court.