BROTHERHOOD OF RAILROAD TRAIN-
MEN v. ALLEN et al.
No. 2896.

Court of Civil Appeals of Texas.
Waco.
May 11, 1950.

Rehearing Denied June 1, 1950.

———◆———

Willis & Lewis, Dallas, J. Hart Willis, Jr., Dallas, for appellant.

Edward C. Fritz, Dallas, for appellees.

LESTER, Chief Justice.

This action was brought by fourteen members of the Brotherhood of Railroad Trainmen against the Texas & New Orleans Railroad Company and the Brotherhood. They alleged that by virtue of a working agreement between the Brotherhood and the Railroad Company which was in effect from September 22, 1937 to and including December 10, 1941, that during such period the Railroad Company violated said agreement: (1) in causing its road crews to perform services within the Dallas-Miller Yard, such as picking up cars and/or engines; (2) setting out cars and/or engines; (3) handling road engines; and (4) turning engines and/or trains; which duties, under said agreement, were to be performed by yard men and not by road crews. Subsequent to 1941 the Brotherhood made claims against the Railroad Company by reason of such violation, and on March 1, 1946 the Brotherhood and the Railroad Company entered into the following agreement:

"Memorandum of Understanding of Settlement Reached in Conference.
"March 1, 1946

"In conference March 1, 1946, it was agreed the following Awards and cases listed as shown in the official ballot of October 18, 1945 would be disposed of as shown:

\*      \*      \*      \*      \*      \*

"Case No. 11–TE—Award 6144
"Case No. 12–TE—Award 6146

"Make a joint check of the record and pay a yard day to road crews required to perform either one or all of the following services at Miller-Dallas Yard, and pay yard day to an available yard crew that would have been called to perform the work involved on each such shift as the road crew performed the work, in contravention of agreements. Joint check and payments to run from September 22, 1937, and cover the following work:

"(a) Pick up or set out or both by road crew Miller-Dallas yard.

"(b) Handling of road engine at Miller-Dallas Yard.

"(c) Turn engine or train in Miller-Dallas Yard.

The foregoing constitutes an understanding of the settlements agreed upon in conference March 1, 1945.

"(S) T. C. Montgomery

"Manager of Personnel.

"(S) G. W. Laughlin
   G. W. Laughlin, Senior Asst.
   Grand Chief Engineer, B of LE
"(S) P. C. Southworth
   P. C. Southworth, Asst. Grand
   Chief Engineer B of LE
"(S) William E. B. Chase
   W. E. B. Chase,
   Deputy President, B of RT
"(S) D. E. McNail
   D. E. McNail, General Chairman, B of
   LE
"(S) L. A. Weiss
   L. A. Weiss, General Chairman, B of
   RT."

Appellees further alleged that said contract was made for their benefit in that they were employees of the Railroad company in the capacity of what is known as "extra men" during all of said time and were available for such services and would have been called to perform the same if they had not been performed by the road crews; that the Railroad Company paid awards totaling $60,616.20 to employees of the Dallas-Miller Yard, but paid approximately ⅔ thereof to twenty men who were regular men in said yard who were seldom, on any occasion of violation, available to do the work done by said road crews, and only approximately ⅓ was divided among the twenty-five men who were extra men that were available during the period of violations. Appellees alleged that the distribution of said funds was done through a conspiracy between the Railroad Company and the Brotherhood, fraud upon the part of each defendant, discrimination, negligence and failure to properly and fairly represent the appellees upon the part of the Brotherhood. They pleaded the amount each appellee had been deprived of in the distribution and sought to recover damages for such amount.

Prior to the trial appellees dismissed as to the Railroad Company and proceeded to trial against the Brotherhood.

In answer to special issues submitted the jury found fraud, unjust discrimination, failure to represent the appellees, negligence and fraud upon the part of the representatives of the Brotherhood, and also found the amount each was entitled to receive under said agreement, and the trial court entered judgment against the Brotherhood in accordance with said verdict. The Brotherhood prosecutes its appeal.

Appellant presents numerous assignments of error but there is one which we consider fundamental, and if appellant's contention is correct in this respect the others become immaterial. The real question is: Can a member in good standing of the Brotherhood sue the Brotherhood for damages for dereliction of duty upon the part of an agent of the Brotherhood? The appellant contends that such an action cannot be sustained.

The preamble of the Constitution of the Brotherhood is as follows:

"Preamble

"To unite the Railroad Trainmen and Bus Operators, to promote their general welfare and advance their interests, social, moral, and intellectual; to protect their families by the exercise of benevolence, very needful in a calling so hazardous as ours, this fraternity has been organized.

"Persuaded that it is for the interests both of our members and their employers that a good understanding should at all times exist between the two, it will be the constant endeavor of this organization to establish mutual confidence, and create and maintain harmonious relations.

"Such are the aims and purposes of the Brotherhood of Railroad Trainmen."

The appellees contend that they were deprived of a part of their share of the amount of said awards by wrongful conduct upon the part of two of their representatives, A. L. Weiss and Doyle Andrews.

Weiss is General Chairman of the Brotherhood of Railroad Trainmen on the Southern Pacific properties in Texas and Louisiana. He is elected by referendum vote of all the members in the territory he serves. In his official capacity he represents the Brotherhood and the members thereof who are in the railway service in negotiating contracts with the railroads concerning working conditions, rates of pay and seniority. Weiss, after conferring with the chairmen of the local lodges whose mem-

bers were to be affected by the awards, and with the approval of said chairmen, selected Doyle Andrews, also a member of the Brotherhood, to check the records to determine what members were available to perform the services on the various dates of each violation and designate to the Railroad Company the names of such members that were available, so the Railroad Company could pay to those so designated the amount of money that they would have earned if they had been permitted to perform the services as provided by the agreement with the Railroad Company. Weiss was present part of the time the check was being made and assisted Andrews to some extent, but most of the checking was done by Andrews. After the check was made certain members were designated to the Railroad Company as being entitled to receive the funds represented by the awards. In this designation twenty regular men were included and the Railroad Company disbursed the fund among those so designated. The appellees say that all of the available records were not checked; that certain records, if checked, would have revealed that the extra men would have been entitled to receive most if not all of the money paid by the Railroad Company under the awards; that the act of including the twenty regular men in the designation was a discrimination against them and that same exceeded the authority of said representatives; that said representatives failed to represent them in making said designation and that said representatives perpetrated a fraud upon the appellees in agreeing to said designation; all of which the jury found.

The Brotherhood is an unincorporated fraternal benefit association as well as a union, composed of a Grand Lodge with many subordinate lodges over the country, with several hundred thousand members employed in train, yard, bus and truck service. We have been cited to no case in Texas where a member in good standing of a union has sued the union for damages sustained as the result of the acts of an agent of said union. We have been cited to cases where a member has been permitted to sue for the protection of seniority rights and cases where an expelled member has sued the union for damages for wrongful expulsion, but when he brought suit he was no longer a member thereof. The appellate courts of some other states have passed upon similar questions. If Weiss and Andrews, or either of them, committed any fraud or failed in his or their duty to properly represent the appellees and as the result of which they sustained damages, they could be held accountable to the appellees therefor, because a principal can sue his agent for such dereliction of duty. This principle is so well established that it needs no authorities cited to support the same. The appellee's comembers, if they received money to which they were not entitled but to which the appellees were, the appellees would have a cause of action against such members as individuals. The appellees and the other several hundred thousand members are principals, and we are of the opinion that one or more principals can not sue their coprincipals and require them to respond in damages for the dereliction of duty of a joint agent. Weiss and Andrews were just as much the agents of appellees as they were the agents of the other members of the Brotherhood. The Brotherhood being a benefit fraternal society, its assets are held jointly between all of its members, including the appellees, and they say that only twenty members received a part of the award that they were not entitled to. None of the other several hundred thousand members received any part of the fund, nor did they take any part in its distribution; and to require them to bear a proportionate part of the loss sustained by the appellees from the dereliction of the joint agents of all in order that they might receive the full amount that they claim they were entitled to receive under the agreement, is not a sound legal principle. To hold otherwise it would furnish a means by which the Brotherhood could be destroyed by one or more of its own members. They are, in effect, suing themselves. Hromek v. Gemeinde, 238 Wis. 204, 298 N.W. 587; McClees v. Grand International B. of L. Engineers, 59 Ohio App. 477, 18 N.E.2d 812; Huth v. Humboldt Stamm, 61 Conn. 227, 23 A. 1084; Koogler v. Koogler, 127 Ohio St. 57, 186 N.E. 725.

The judgment of the trial court is reversed and judgment rendered in favor of the appellant.