The judgment of the trial court is reversed and the cause is remanded.

**H. C. ATKINSON, Appellant,**

v.

**Guy A. THOMPSON, Trustee for the International-Great Northern Railroad Company, et al., Appellees.**

**No. 13176.**

Court of Civil Appeals of Texas.

Houston.

Feb. 20, 1958.

Rehearing Denied March 13, 1958.

C. B. Stanley, Houston, for appellant.

Hutcheson, Taliaferro & Hutcheson, Woodul, Arterbury & Wren, Carroll R. Graham, Howard S. Hoover, Houston, for appellee.

Guy A. Thompson, trustee, International-Great Northern R. Co.

Harold C. Heiss and Russell B. Day, Cleveland, Ohio, Willis & Willis, Hart Willis, Jr., Dallas, for Brotherhood appellee.

BELL, Chief Justice.

Appellant brought suit against Guy A. Thompson, Trustee for International-Great Northern Railroad Company, the Brotherhood of Locomotive Firemen and Enginemen, and Neches Lodge 156 of said Brotherhood. Missouri Pacific Railroad Company is successor to Guy A. Thompson, Trustee. The object of the suit was to recover wages of $7,000 that would have been paid appellant as a fireman had he been permitted to work for Missouri Pacific in the Palestine District from September 29, 1952, to February 2, 1954. The trial court sustained a plea in abatement of Missouri Pacific which alleged the petition of appellant stated a cause of action that lay within the jurisdiction of the National Railway Adjustment Board. It also sustained the plea in abatement of the Brotherhood and Neches Lodge 156 alleging that appellant was a co-principal with all other members of the Brotherhood, which is an unincorporated association, and he could not sue his co-principals for damages, but could only sue his agent for any wrongful acts, any agent of the Brotherhood being also his agent.

We are called upon to determine whether the trial court correctly sustained each of the above pleas in abatement.

These are the material substantive allegations of appellant:

The Brotherhood "is an unincorporated fraternal benefit association and a railroad labor union" and "Neches Lodge

No. 156 * * * is an unincorporated association or lodge of said Brotherhood." There was in full force and effect at all material times a written contract between Guy A. Thompson, Trustee, and the Brotherhood which was made for the benefit of all members of the Brotherhood. Appellant is a member of the Brotherhood and its Neches Lodge 156. The contract in part provides that the right to regular engines, positions or runs shall be governed by the seniority of firemen; that firemen shall rank from the date of their first service as firemen when called for service; that in case of reductions they shall be in reverse order of seniority. The contract also provides that no fireman *shall be suspended or discharged without just or sufficient cause*. If a fireman feels he has been unjustly dealt with, he will have the right to appeal to his superior officer within 10 days, either personally or through his local or general chairman. In addition to the provisions of the contract the Missouri Pacific and its employees had established by usage and custom the same scheme of seniority and freedom from discharge without just or sufficient cause. If there should be a violation of these rules as to seniority and discharge, the aggrieved fireman would be paid for time lost by reason of such violation. Appellant was employed as a fireman by Guy A. Thompson, Trustee, on June 22, 1950, and his seniority in the Palestine District is determined by such date. He continued to work until September 29, 1952, *when he was discharged without just or sufficient cause*. (Emphasis ours.) In the *alternative he was refused seniority rights and was not allowed to continue work*. (Emphasis ours.) He was not given a hearing though he appealed to his superior officer within 10 days and duly and timely complied with all conditions precedent to the maintenance of this suit. His *discharge* continued until February 2, 1954, when he was reinstated and *again employed* with seniority dating from his original employment. (Emphasis ours.) As a result of his *discharge,* he lost wages which he would have made had he worked for this period of time. (Emphasis ours.) During such period of time if he had been accorded his rights of seniority he would have earned $7,000. Under the contract and custom and usage, Guy A. Thompson was indebted to him in the sum of $7,000. Under the constitution and by-laws of the Brotherhood appellant was entitled to have the Brotherhood and its lodges, subordinate organizations and agents represent him in his claim for damages, *his discharge* and loss and denial of his rights of seniority, but the *Brotherhood* has neglected, failed and refused to so represent him. (Emphasis ours.) In the alternative, the *Brotherhood* actively instigated his *discharge* and said denial of his rights of seniority, and conspired with Guy A. Thompson, Trustee, to deprive him of his rights of seniority, all to his damage in the amount of $7,000. (Emphasis ours.) Such action was discriminatory, arbitrary and capricious. He has, as required by the constitution of the Brotherhood, duly and timely appealed to the General Grievance Committee, I. G. N. lines, its International President and its Board of Directors, and finally received an adverse decision on August 18, 1956.

These allegations are all that we deem necessary to notice in connection with this appeal.

The plea in abatement of Guy A. Thompson, Trustee, which was sustained, alleged that the petition of plaintiff (appellant) asserted matters which involved an interpretation or application of railway agreements concerning rates of pay, rules or working conditions, and that these are matters exclusively within the jurisdiction of the National Railroad Adjustment Board as set up by Title 45 U.S.C.A. § 151 et seq., and until appellant has invoked such jurisdiction and gotten a determination of such Board the trial court has no jurisdiction.

The Brotherhood and Neches Lodge 156 filed, among other pleas in abatement, a plea that appellant could not sue its co-principal but any cause of action he might have as set out in his petition is against the agent

who represented him and the Brotherhood. This latter plea in abatement was sustained and the Brotherhood and its subordinate lodge obtained dismissal of the suit as to them.

The correctness of the trial court's ruling on these two pleas in abatement is the only thing before us for review as no complaint is made here of the trial court's action on the other pleas filed by the Brotherhood and Neches Lodge 156.

We will first consider whether the plea in abatement of the Brotherhood and Neches Lodge 156 was correctly sustained. We have concluded that it was.

We consider the case of Brotherhood of Railroad Trainmen v. Allen, Tex.Civ.App., 230 S.W.2d 325, writ refused; certiorari denied 340 U.S. 934, 71 S.Ct. 501, 95 L.Ed. 674, as controlling. It is the only Texas case we have found, or which has been cited to us, that we deem applicable.

In that case, Allen and thirteen other members of the Brotherhood brought suit against the Texas and New Orleans Railroad Company and the Brotherhood, alleging a contract between the Railroad and the Brotherhood which provided that where yard work was assigned to a road crew both such road crew and a yard crew which was available but not called would each receive pay for the work. The plaintiffs contended they were available from time to time for yard work done by a road crew, but were not paid, and most of the pay to yard men was actually to yard crews that were not available and who did not do the work. It was alleged that this distribution of pay was the result of "a conspiracy between the Railroad Company and the Brotherhood, fraud upon the part of each defendant, discrimination, negligence and failure to properly and fairly represent the appellees upon the part of the Brotherhood." The suit was to recover wages thus lost. The plaintiffs dismissed as to the Railroad. The Brotherhood urged its plea in abatement, which is the same as was sustained by the trial court in the

case before us. It was overruled in the trial court. In reversing and rendering the judgment of the trial court, the Court of Civil Appeals held plaintiffs were co-principals with all members of the Brotherhood, it being an unincorporated association, and a co-principal could not sue his co-principals for damages occasioned by the wrong of a common agent. He would in effect be suing himself. Suit should be against the agent individually who represented plaintiffs and the Brotherhood.

The following cases fully support the decision in the Allen case: Hromek v. Gemeinde, 238 Wis. 204, 298 N.W. 587; McClees v. Grand International Brotherhood of Locomotive Engineers, 59 Ohio App. 477, 18 N.E.2d 812; Huth v. Humboldt Stamm, No. 153, 61 Conn. 227, 23 A. 1084; Koogler v. Koogler, 127 Ohio St. 57, 186 N.E. 725; Marchitto v. Central R. Co. of New Jersey, 9 N.J. 456, 88 A.2d 851; Kordewick v. Brotherhood of Railroad Trainmen, 7 Cir., 181 F.2d 963.

The appellant has cited the following cases in support of his position that suit may be maintained by him against the Brotherhood: International Printing Pressmen and Assistants' Union of North America v. Smith, 145 Tex. 399, 198 S.W.2d 729; Leach v. Liberty State Bank, Tex.Civ. App., 116 S.W.2d 1143; Brotherhood of Railroad Trainmen v. Cook, Tex.Civ.App., 221 S.W. 1049, and Brotherhood of Railroad Trainmen v. Luckie, Tex.Civ.App., 286 S.W.2d 712, ref. n. r. e. In the first three cases the question of the right of a member to sue the Brotherhood was not raised. In the first two cases the plaintiff in each case was not a member at the time the suit was brought. In the Luckie case, last cited, the question, among others, was raised and the Court of Civil Appeals held the suit could be maintained. This was a temporary injunction case only, seeking equitable relief to preserve the status quo pending a determination of the merits of the controversy. We have read all of the authorities cited by the Court of Civil Appeals and we cannot agree that they

support the Court's conclusion on this issue. In each of the cases cited, suit was against the Brotherhood which, under the Railway Labor Act, was the exclusive bargaining agent by virtue of the Act, by persons who were within the bargaining unit, but who were not members of the Union. In fact, they were not, because of race, eligible for membership. Too, in those cases the real question was whether the suit, being against the Brotherhood, was exclusively within the jurisdiction of the Railroad Arbitration Board. It will also be noted that in the Luckie case our Supreme Court refused a writ of error, there being no reversible error.

In the Allen case, by which we feel bound, there was an outright refusal of a writ of error. Too, in the Allen case the right of a member to sue the unincorporated Brotherhood was the only question involved.

Appellant urges that under Articles 6133–6136, Revised Civil Statutes (1925), this suit may be maintained because these statutes make an unincorporated association a legal entity for the purpose of suing or being sued. We have found no Texas case discussing these statutes in connection with the precise question involved here. However, the Supreme Court of New Jersey in the case of Marchitto v. Central Railroad Co. of New Jersey, supra [9 N.J. 456, 88 A.2d 856], construed the statute of that state which was not unlike our statute, and appellant can find no solace in its holding. In holding the statute to be purely procedural, the court said:

"By statute suits by and against it in the association name have been authorized, R.S. 2:78–1 (now N.J.S. 2A:64–1), N.J.S.A., but such statutory authorization has not changed the substantive nature of its rights and obligations; * * *."

Rule 28, Texas Rules of Civil Procedure, is not unlike Article 6133. It authorizes suits in the firm name against persons doing business under an assumed name. How-ever, this has been held to be purely procedural. Dillard v. Smith, 146 Tex. 227, 205 S.W.2d 366.

A Brotherhood can, of course, be sued in the firm name, but in such case the judgment affects all the members as to their property in the Brotherhood. The real reason appellant cannot sue for the wrongful act of the agent of the Brotherhood is that as a member of the Brotherhood he is jointly responsible with all other members for the actions of the group itself, and accordingly as a principal he has no cause of action against co-principals for the wrongful conduct of a common agent.

Appellant says, however, there is no allegation that the Brotherhood, or its agent, was his agent. He does allege, however, that under the constitution and by-laws of the Brotherhood and its local lodges he was entitled to have the Brotherhood and its local lodges, subordinate organizations and agents and representatives, represent him and this they neglected, failed and refused to do, or, in the alternative, they directed and instigated his discharge and denial of seniority rights, and conspired with Guy A. Thompson, Trustee.

We think this tantamount to an allegation that the Brotherhood and its subordinate lodges were his agents or representatives, and an unincorporated association can act only through an agent.

Too, at another point in his pleading appellant alleged "each of the acts * * * was performed by an agent, servant and employee of the said respective defendant, acting in the course and scope of his employment."

These allegations are sufficient, from a standpoint of pleading, to set up that the agents of the Brotherhood and its local lodges were his agents.

The trial court sustained the plea in abatement of Missouri Pacific and the effect of such is to hold that the cause of action set up by the plaintiff is one exclusively

within the jurisdiction of the Railroad Adjustment Board.

■ There was no evidence introduced in the trial court. The disposition of the plea in abatement was based solely on the pleading. In such case the action of the trial court was tantamount to sustaining a general demurrer (since the abolition of the general demurrer a special exception attacking the substance of the pleading). Turman Oil Co. v. Roberts, Tex.Civ.App., 96 S.W.2d 724, writ refused. In such case we must examine plaintiff's petition and indulge toward it every reasonable intendment. If, under such appraisal, it states a cause of action within the jurisdiction of the court, as distinguished from a cause of action exclusively within the primary jurisdiction of the Railroad Adjustment Board, it is the court's duty to entertain such action. Upon a very close study of the plaintiff's second amended original petition we have concluded that appellant has set up a cause of action based on *wrongful discharge* apart from his *alternative* assertion that he was denied his seniority.

■ An analysis of plaintiff's petition will show that he sues, first for damages for loss of wages sustained when he was discharged without just or sufficient cause, and secondly (and in the alternative) for the loss of wages occasioned by his not being allowed to work in accordance with his rights of seniority. This alternative type of pleading is permissible and the fact that one alternative count may not state a cause of action does not affect the other which sufficiently sets up an independent cause of action. Rule 48, T.R.C.P. We have stated hereinabove the substance of plaintiff's allegations and have emphasized those allegations showing wrongful discharge, and we will not repeat them here. It is true that plaintiff makes no allegation of the facts which were the basis of what he characterizes his discharge, but this is unnecessary. He may plead, as he has, a conclusion and the fact that it is a conclusion is not fatal. Rule 45, T.R.C.P.

Such a pleading is subject to special exception as to form, so a party may be made to plead his cause of action more fully so as to impart fair notice to his adversary, but it is not subject to special exception attacking the substance of the pleading. The plea in abatement attacked the right of plaintiff to maintain the causes of action stated by plaintiff because of want of primary jurisdiction in the trial court. If one cause of action stated is maintainable, though some other one stated is not, it was error for the trial court to sustain the plea in abatement.

We have concluded that the trial court has jurisdiction to award damages for what is truly a wrongful discharge, not requiring an interpretation and application of the contract, usage and custom as to what constitutes unlawful discharge, and the appellant need not seek redress through the National Railroad Adjustment Board.

The parent case, and the one primarily relied on here, is Moore v. Illinois Central R. Co., 312 U.S. 630, 61 S.Ct. 754, 85 L.Ed. 1089. In that case Moore brought suit to recover damages for his wrongful discharge. He was discharged, according to the trial court's finding, because he had previously sued the company. It was urged that he could not sue in a court but must first exhaust his administrative remedy provided in the Railway Labor Act, 45 U.S.C.A. §§ 151–153. The Supreme Court held that he need not do so, but he could treat the discharge as final and sue for damages for wrongful discharge, or, he could seek reinstatement in which case jurisdiction would be in the Adjustment Board.

Our own Supreme Court, through its Commission of Appeals, in the case of Texas & New Orleans R. Co. v. McCombs, 143 Tex. 257, 183 S.W.2d 716, followed the Moore case. In the Texas & New Orleans case there was a suit by a former employee to recover wages he claimed for overtime work he had done. Apparently, there was no dispute concerning the interpretation or application of the collective bargaining

agreement, but the question was whether the overtime had been worked. It does not seem there was involved a controversy as to whether overtime was payable according to the contract. The court held this type of suit could be maintained without exhausting the administrative remedy provided by the Railway Labor Act.

In the case of Thompson v. Moore, 223 F.2d 91, the United States Court of Appeals for the Fifth Circuit, held on the authority of the two cases cited immediately above, that a railroad employee who had been discharged because of his alleged physical condition could sue for damages for wrongful discharge and need not pursue the administrative remedy set up by the Railroad Adjustment Board. There the jury found the employee was, in fact, physically fit to perform his duties and therefore his discharge for physical incapacity was wrongful. The court there followed the state law as announced by the Texas & New Orleans case, in line with the holding of Transcontinental & Western Air, Inc., v. Koppal, 345 U.S. 653, 73 S.Ct. 906, 97 L.Ed. 1325, that the law of the state where suit was brought was controlling on whether the administrative remedy set up by the Railway Labor Act must be pursued to the exclusion of the courts.

There are numerous cases from other states decided by Federal courts and State courts holding that suit may be brought for damages for wrongful discharge where the relationship of employer-employee has been terminated. We will not cite them, but refer to the annotations under 45 U.S.C.A. §§ 151–153.

In each of the cases above discussed the plaintiff was not at the time of suit an employee of the defendant. Actually, we have found no case where an employee contended, as here, that he was unjustifiably discharged and later entered upon a new employment and should recover damages for wages lost while he was out of work, due to his unlawful discharge. However, we fail to see any reason why he cannot do so in a proper case. To illustrate: Suppose "A" is charged by his employer with theft of company property. "A" is discharged though in fact he is not guilty. Certainly, if he accepts his discharge as final, he can, under the above cited cases, sue for damages. However, suppose that, as *alleged* in this case, he is kept out of work from September 29, 1952, until February 2, 1954, because of his discharge, and then is re-employed why may he not sue the same as if he had accepted the discharge as final? In either case, the judgment of the. court would do nothing except determine whether in the particular case the employee had been guilty of theft. It could not affect the rights of other employees and it would have no prospective effect. It would of itself only determine that in the instance involved the facts authorizing a discharge did not exist.

At the same time, there may be a type of discharge involved that would require an interpretation and application of the collective bargaining agreement and the customs and usages which could only be done by the National Railroad Adjustment Board, because a decision would have prospective effect. To illustrate: Suppose that "A" is discharged because he had brought a suit against his employer. Eighteen months later he is re-employed. After his re-employment he brings suit to recover lost wages resulting from his discharge. He does not deny he brought the suit, but contends that under the contract and custom and usage such act does not constitute grounds for disciplinary action. In such a case there is a dispute between employer and employee that calls for a construction and application of the contract which is the basis of the rights of all other employees working under it and the decision will possibly affect the other employees in the future.

We do not think the effect of the decisions is that in every case of discharge a suit may be maintained in the courts. We think rather it is that if there is a discharge and an acceptance of it by the employee as finally terminating the employer-employee

relationship, the suit may be brought. This is the interpretation placed on the Moore case by the Supreme Court of the United States in Slocum v. Delaware, L. & W. R. Co., 339 U.S. 239, 70 S.Ct. 577, 94 L.Ed. 795. However, if the employer-employee relationship is subsequently resumed and the question involved requires an interpretation or application of the contract or usage and custom on the issue of whether the grounds of discharge of the employee are authorized under the contract, usage or custom, as distinguished from merely an ascertainment of facts as to whether the employee was guilty of such act, we think the complaint would be within the primary jurisdiction of the National Railroad Adjustment Board. Of course, we have no way of knowing what the proof on trial will show.

Should the evidence on trial show that actually appellant was merely denied his seniority rights, he cannot recover under Slocum v. Delaware, L. & W. R. Co., 339 U.S. 239, 70 S.Ct. 577, 94 L.Ed. 795; Order of Railway Conductors of America v. Southern Railway Co., 339 U.S. 255, 70 S.Ct. 585, 94 L.Ed. 811; Marchitto v. Central Railroad Co. of New Jersey, 18 N.J.Super. 163, 86 A.2d 795 (N.J.Super. App.Div.), certification denied by N.J.Sup.; Priest v. Chicago, R. I. & P. R. R., 8 Cir., 189 F.2d 813.

Appellant urges, however, that even though his damages may have resulted from a denial of seniority rights he may recover lost wages for the period of such denial because a recovery will have no prospective effect. To this we cannot agree. A determination of whether he was denied his seniority rights necessarily determines as between him and Missouri Pacific what his seniority rights are under the contract made by the Brotherhood, not only for his benefit but for the benefit of all other employees. The effect of a judgment declaring his seniority under the contract would be binding on the parties to the suit in the future as to this issue and thus is prospective in operation.

The judgment of the trial court sustaining the plea in abatement of the Brotherhood of Locomotive Firemen and Enginemen and Neches Lodge No. 156 is affirmed.

The judgment of the trial court sustaining the plea in abatement of Guy A. Thompson, Trustee, is reversed and the cause as to such Trustee is remanded for trial on the merits.