UNITED ASSOCIATION OF JOURNEYMEN AND APPRENTICES OF THE PLUMBING AND PIPE FITTING INDUSTRY OF THE UNITED STATES AND CANADA ET AL v. H. N. BORDEN.

No. A-7058. Decided November 4, 1959.
(328 S.W. 2d Series 739)

*Mullinax, Wells & Morris* and *L. N. D. Wells, Jr.*, all of Dallas, for petitioner.

The Court of Civil Appeals erred in failing to sustain petitioner's contention that a member of a voluntary unincorporated association has no right to recover money damages from the association of which he is a member for the dereliction of duty by the joint agent of the association members. Atkinson v. Thompson, 311 S.W. 2d 250, error refused; Brotherhood of Railroad Trainmen v. Allen, 230 S.W. 2d 235, error refused, certiorari denied, 340 U.S. 934, 341 U.S. 906, 71 Sup. St. 501, 95 L.Ed. 674; International Association of Machinists v. Gonzales, 356 U.S. 617, 78 Sup. Ct. 923, 2 L.Ed. 2d 1018.

*Lyne, Blanchette, Smith & Shelton* and *Robert W. Smith*, all of Dallas, for respondent.

MR. JUSTICE HAMILTON delivered the opinion of the Court.

1  On the principal question in this case, we hold that a member of an unincorporated association can maintain an action against the latter for damages caused by an intentional wrong knowingly committed by one of its agents, provided the association participates in or otherwise authorizes or ratifies the wrongful conduct. The suit is an action for damages brought by H.N. Borden, respondent, against the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry and its Local Union 100, petitioners. Each petitioner is an unincorporated labor union. The trial court sustained petitioners' pleas in abatement and dismissed the suit on two grounds, holding: (1) that respondent, as a member of the two labor organizations, has no standing to maintain this suit against them for money damages; and (2) that the matters of which the respondent complains are within the exclusive jurisdiction of the National Labor Relations Board. Having concluded that neither of these contentions is sound, the Court of Civil Appeals reversed the judgment of the trial court and remanded the cause for trial. 316 S.W. 2d 458.

2  The holding of the Court of Civil Appeals that respondent's complaint does not lie within the exclusive jurisdiction of the National Labor Relations Board is not challenged here, and it is unnecessary for us to consider that question. We are confronted at the outset, however, by petitioners' contention that respondent did not perfect his appeal by timely filing an appeal bond. Within thirty days after the entry of final judgment in

the district court, respondent filed a bond conditioned that he would pay all costs that might be adjudged against him in the suit. It did not specify the judgment from which he wished to appeal, and was not conditioned that his appeal would be prosecuted with effect.

Petitioners moved the Court of Civil Appeals to dismiss the appeal, and respondent thereupon requested and was granted leave to amend the bond. A proper appeal bond was then filed promptly, but this was after the expiration of the thirty-day period allowed by Rule 356, T.R.C.P. Petitioners argue that the original bond was in no sense an appeal bond and therefore could not be amended. We do not agree. Rule 430, T.R.C.P., provides that when there is a defect of substance or form in any appeal bond, then on motion to dismiss for such defect, the appellate court may allow the same to be amended by filing a new bond. This authorizes the amendment of any sort of instrument which can be said to be a bond and which was filed for the purpose of taking an appeal. See Grogan Mfg. Co. v. Lane, 140 Texas 507, 169 S.W. 2d 141. Although the original bond does not show on its face that it was intended to serve as an appeal bond, there is other evidence in the record which supports an implied finding by the Court of Civil Appeals that the same was filed in a bona fide attempt to invoke appellate court jurisdiction. We presume such a finding in support of its action, and hold that the intermediate court did not err in permitting the bond to be amended.

3   Turning now to the merits of the appeal, respondent alleged that he is now a member of the two labor organizations. While a member of the United Association's local union in Galveston, he was promised a job by Farwell Construction Company on the construction of the Republic National Bank Building in Dallas. After obtaining a clearance card from the Galveston local stating that he was in good standing and should be admitted to any other local union of the United Association, he went to the headquarters of Local Union 100 in Dallas for the purpose of being accepted into membership in order that he might take the job which had been promised him. In the meantime, Farwell Construction Company had placed a call with Cleo Lanham, agent and business manager of Local Union 100, for respondent to go to work on the bank building. Lanham at first refused to accept respondent's clearance card. Several days later, the card was accepted, but at the same time respondent was cursed and abused by Lanham and informed that as long as the latter had power, he would in his capacity as agent and

business manager see to it that respondent was never allowed to work on the bank. Although respondent thereafter submitted his complaint to the petitioners at a meeting, he was offered no remedy and was told that if he continued to complain he would be discharged from the union altogether.

It was further alleged that the petitioners, with actual knowledge of the acts of their agent and business manager, had acquiesced in and ratified same by their subsequent conduct in that respondent was never offered a remedy or allowed to work on the bank building; that petitioners have, without any cause or reason whatsoever, wilfully and discriminatorily refused to allow respondent to do such work; and that the wilful, malicious and discriminatory acts of the petitioners constitute a conspiracy and a wrongful interference with respondent's right to contract and work. There are also allegations of the amount which respondent would have earned on the bank job, and his actual earnings in other employment he was able to find, and a prayer for actual and exemplary damages.

Petitioners contend and the trial court held that this case is governed by the general rule that an unincorporated association is not liable to one of its members for damages occasioned by the wrongful act of another member or agent of the association. The reason for such immunity is that the injured member and the association are regarded as coprincipals and the tortfeasor as their common agent. The wrongful conduct is thus imputable to the plaintiff for purposes of his action against the association. See Annotation, 14 A.L.R. 2d 473. Typical of the cases in which these principles have been correctly applied are De Villars v. Hessler, 363 Pa. 498, 70 A. 2d 333, 14 A.L.R. 2d 470, where the plaintiff was injured as a result of the negligent operation o fa steam table maintained by the defendant association at a county fair, and Hromek v. Gemeinde, 238 Wis. 204, 298 N.W. 587, which holds that an unincorporated labor organization is not liable for injuries received by a member who tripped over a platform negligently placed by the officers of the union in a hall rented for a union meeting. In each instance the negligence occurred in the course of an undertaking which was for the benefit of all members of the organization, including the plaintiff, and under these circumstances it was entirely proper to impute the wrongful conduct to the latter.

4 It cannot be said, however, that a labor organization or other unincorporated association is never liable to a member for the wrongful conduct of one of its agents. Since the association's

immunity rests upon the premise that the tort-feasor also acts as agent for the injured member, the rights and liabilities of the parties necessarily depend upon the relationship existing at the time the wrongful act is committed. For example, where the relation of principal and agent is deemed to exist between the plaintiff and the association's representative when the wrong was done, the former could not acquire a cause of action against the organization by simply terminating his membership. If anyone acting for the association is always to be regarded in law as agent of its members in whatever he may do, it would seem to follow that a member could not even recover damages for wrongful expulsion. In such a case the plaintiff might not be a member at the time of suit, but this would not alter the fact that the association's representative was acting as his agent in expelling him from membership.

It is well settled, however, that a member does have a cause of action for damages against his union for wrongful expulsion. See International Printing Pressmen and Assistants' Union of North America v. Smith, 145 Texas 399, 198 S.W. 2d 729; International Association of Machinists v. Gonzales, 356 U.S. 617, 78 S. Ct. 923, 2 L. Ed. 1018. The question now under consideration is not discussed in these cases, but the reasons for holding that the union representative does not act as agent for a member who is wrongfully expelled are well expressed in Bonsor v. Musicians' Union, (Eng.) 3 W.L.R. 788, 3 All E.R. 518, as follows:

"For the purposes of this appeal I am prepared to accept that proposition (i.e. the general theory that the agent is the agent of each member of the association) without inquiry as to what, if any, are the limits to be put on it. *But one of its essential ingredients is that the act complained of should be done by the agent on behalf of the injured member.* Was the Court of Appeal right in holding that the committee which expelled Mr. Kelly was, in so doing acting as his agent? * * * *To say that this is done on behalf of the person expelled seems to me to be an unwarranted extension of the agency and quite out of keeping with reality.*"

There is thus at least one exception to the general rule that a union representative is to be regarded as an agent for all of its members in everything he does. The wrongful act will not be imputed to an injured member if committed in the course of an undertaking that is strictly adverse to the latter's interests. This is simply another version of the agency rule that a prin-

cipal is not liable for the torts committed by his agent while acting adversely to him. See 3 C.J.C. Agency, section 259; Mcchem on Agency, 2d ed. 1914, Vol. 2, p. 1311, section 1728.

The same idea is expressed in Taxicab Drivers' Local Union No. 889 v. Pittman, Okla., 322 P. 2d 153, which is similar in some respects to the present case. There the plaintiff had signed a petition to the international union making certain accusations against the officers and business manager of the local union. The international union made an investigation but took no action against the officers of the local union. Charges were thereafter filed against the plaintiff alleging that he had violated the provisions of the union constitution making it an offense to abuse fellow members. After a hearing which the court held was so unfair as to constitute no trial at all, the plaintiff was found guilty and sentenced to pay a fine and suspended from union activities for one year. Apparently he was not expelled from the union. On the next dues-paying date, the plaintiff tendered his dues but refused to pay the fine, and the union secretary declined to accept the dues unless the fine was also paid. Later the plaintiff was suspended from work by his employer at the request of the union pursuant to the provisions of a working agreement which required that all employees be in good standing with the local union. In the trial court the plaintiff was awarded recovery of actual and exemplary damages against both the local and the international union. The judgment against the latter was reversed on appeal because of defective service of process, but the recovery against the local union was upheld. In disposing of the contention that the union could not be subjected to liability for the acts of its agents because the plaintiff-member was equally responsible for the wrongful conduct, the court said:

"We note, however, that in each of those cases [holding that a labor union or other unincorporated association is not liable to a member for damage caused by the association's agent] the conduct of the agent was in the performance of his duty on behalf of the association in some project for which the plaintiff could reasonably expect to benefit just as much as any other member, at the inception of the project * * * . Common sense leads inexorably to the conclusion that officers of the Union causing plaintiff to be suspended from work without pay are anything but his agents for that purpose. The contrary conclusion would smack of flagellantism, an unlikely theory upon which to determine legal liabilities. The use of the agency

doctrine under these specific circumstances has no support either in reason or public policy."

The contrary conclusion is not required by the decision in Brotherhood of Railroad Trainmen v. Allen, Texas Civ. App., 230 S.W. 2d 325 (wr. ref.). In that case the union and the railroad had made a contract in settlement of claims for work which the latter had caused to be done by road crews instead of yard crews as required by the working agreement. By the terms of the settlement, the railroad was to pay a yard day to any available yard crew that would have been called to perform the work. Two members of the union then checked the records and advised the railroad which employees were entitled to receive the money, and the funds were distributed among those so designated, about one-third being paid to extra men and two-thirds to regular men. Each of the plaintiffs was an extra man and was paid part of the award. They later brought suit against the railroad and the union, contending that they should have received practically all of the money that went to the regular men.

The plaintiffs there alleged that the actions of the railroad and the union were fraudulent in that they wilfully and knowingly contrived to benefit one group of employees at the expense of another group and that the collaboration of such defendants was a conspiracy against plaintiffs' rights, but the verdict does not support either of these theories. The railroad was dismissed prior to the trial, and no conspiracy issue was submitted. While the jury found, among other things, that the action of the union in designating others to receive the money was a fraud on the plaintiffs, the term "fraud" was defined as "any act, omission or concealment, which involves a breach of a legal duty, trust or confidence, justly imposed, and is injurious to another, or by which an undue and unconscientious advantage is taken of another * * *." The element of wrongful motive or intent was not included in the definition, and the answer to Special Issue No. 12 was simply a finding of legal or constructive fraud.

The union representatives in the Allen case undoubtedly were acting for the plaintiffs' benefit in making the settlement and in checking the records to ascertain how the money should be distributed. As a result of these activities, the plaintiffs were designated to and did receive part of the funds. Any idea that the agents consciously worked against the plaintiffs' interests is effectively dispelled by the jury's determination that the distribution of the money was proximately caused by the negligent

failure to check all available records. As the controversy reached the appellate court, therefore, it was simply a case of legal, but not wilful, fraud and discrimination resulting from negligence in performing services for the benefit of the plaintiffs and other union members. It was proper under these circumstances to impute the wrongful conduct to the plaintiffs and hold that they could not recover from the union for the dereliction of the joint agents.

5  The legal responsibility of an unincorporated association for the wrongful conduct of its agents should not be substantially different from that of an ordinary principal. The general rule in one principal is not civilly liable to another for the tortious acts of an agent who acts for both parties with their consent. He is responsible, however, where there is collusion with the agent, active participation in the wrongful act, or the same is otherwise authorized or ratified. See Ringer v. Wilkin, 32 Idaho 330, 183 P. 986; Boss v. Tomaras, 251 Mich. 469, 232 N.W. 229; Fuchs v. Leahy, 321 Mo. 47, 9 S.W. 2d 897; 3 C.J.S. Agency, section 260. This was recognized in Blair v. Baird, Texas Civ. App., 94 S.W. 116 (wr. dis.), where the court pointed out that "by the terms of the contract, O'Neal was the joint agent of the parties, and unless it had been shown that he had conspired with appellant Blair to defraud appellees, appellants would not be responsible for any misconduct on the part of O'Neal."

The present controversy has not been tried on the merits, and we do not know what the evidence will disclose. According to the petition, it was Lanham's duty to place the members of the union with their various job opportunities. As long as he attempted in good faith to discharge that responsibility in a proper manner, his activities were calculated to benefit the respondent as much as any other member. If it appears that the denial to respondent of an opportunity to work on the Republic Bank Building, even though wrongful, resulted merely from negligence, inadvertenec or mistake on the part of Lanham while trying to perform his duties fairly and impartially, petitioners are not legally responsible for respondent's damages. Brotherhood of Railroad Trainmen v. Allen, supra.

Under the pleadings, however, respondent is not confined to proof of negligence, inadvertence or mistake. He alleges that upon his arrival in Dallas, Lanham at first refused to accept his card; that when the card was later accepted, he was cursed and abused by Lanham and informed that the latter would see

to it that he was never allowed to work on the bank job; that he was threatened with expulsion from the union if he continued to complain of this treatment; and that the acts of the defendants were willful and malicious and constiute a conspiracy. These allegations will support proof that respondent was willfully denied a job opportunity to which Lanham knew he was entitled under the rules and procedures established by petitioners for allocating work among their members, and that petitioners either conspired with Lanham to bring this about or otherwise authorized or ratified his wrongful conduct. If these are the facts, we think the case represents another exception to the general rule mentioned above, and that respondent is entitled to maintain this suit against petitioners. It would be quite incongruous to say that the business manager was acting as agent for respondent in knowingly depriving him of all rights and privileges of union membership in so far as the Republic National Bank job is concerned.

We agree with the Court of Civil Appeals that the suit should not have been dismissed on the pleadings in their present form, and its judgment is affirmed.

Opinion delivered November 4, 1959.

MR. JUSTICE SMITH concurring.

In concurring with the majority opinion, I feel constrained to set down my views relative to the improper action of the trial court in sustaining petitioners' plea in abatement and dismissing respondent's cause of action. The writ in the present case was granted because of the tentative view that the case of Brotherhood of Railroad Trainmen v. Allen, Texas Civ. App., 230 S.W. 2d 325, wr. ref. cert. den. 340 U.S. 934, 71 S. Ct. 501, rehearing denied 341 U.S. 906, 71 S. Ct. 611, was controlling and required a dismissal of Borden's suit. I do not agree with petitioners that the Allen case is controlling. However, since the writ has been granted, and since the petitioners are entitled to a full analysis of the cases upon which they rely, as well as our reasons for declining to follow such cases, I respectfully file the following opinion.

The facts, as pleaded, show that the agent of the Union in perpetrating the alleged wrongful acts was not in fact acting for Borden, although Borden alleged that he was and still was at the time of filing the suit a member of Labor Union 100. Borden alleged that on the 15th day of September 1953, he was

promised a *job opportunity* on the construction of the Republic National Bank Building at Dallas, Dallas County, Texas, by Farwell Construction Company. Borden alleged that prior to such job offering, he was a member of labor union's local in Galveston, Texas; that he secured a clearance card from the Galveston union stating that he was in good standing and should be admitted to any other local union, but, that upon arrival in Dallas in September 1953, the Local Union 100, by and through its agent and business manager, Cleo Lanham, whose duty it was to accept Borden, refused to accept such clearance card; that Lanham so refused even though A. G. Thurman, a duly authorized representative of Farwell, had, by long distance telephone, given instructions that Borden had been employed and request was made that he be allowed to work; that on October 9, 1953 the labor unions finally accepted the clearance card, but at the same time Lanham, while acting in his official capacity, cursed and abused him, and thereafter did state and inform Borden "that as far as he, the said Lanham, had control and as long as he had any such power, he would in his capacity as Agent and Business Manager of the Union see to it that this plaintiff would never be allowed to work on the *job opportunity* promised to him by Farwell Construction Company." The petition further alleges in substance that the labor unions acquiesced in and ratified such conduct, and that all of such actions and conduct on the part of labor unions and said agent amounted to conspiracy, and constituted an interference with Borden's right to contract and his inherent right to work. Borden also alleged that he had a contract with both labor unions, and implied in such contract was a promise by the labor unions not to discriminate unfairly or unjustly or to deny a member a right to work, and that the acts complained of constituted a breach of such implied contract.

Borden's prayer was for damages in the total sum of $19,039.50. The sums of $5,000.00 for mental anguish, $4,039.50 as damages for loss of earnings, and $10,000.00 as punitive damages make up the total.

Borden's pleadings indicate a total loss of earnings on the Republic Bank Job would have been $7,097.00. However, in mitigation of his damages, he pleaded that "as a result of being denied the opportunity on the Republic National Bank Building, the plaintiff did attempt to find other work and did so find other *wirk* (sic) to-wit: Kiefer Plumbing Company, from which the plaintiff earned $1229.60; Rose Brothers Plumbing Company, from which the plaintiff earned $830.60; Spencer

Brothers Plumbing Company, from which the plaintiff earned $997.30, but that the total of the amount earned during this period was $4,039.50 less than he would have earned had he been allowed to work on the Republic National Bank Building in Dallas, Dallas County, Texas, during the same period, to-wit: September 15, 1953, to September 15, 1954."

The labor unions filed separate pleas in abatement. The trial court sustained both pleas. The parent body, United Association, limited its plea to the claim that Borden had no standing to sue it for the reason "that a member of an unincorporated Association may not sue said Association for *dereliction of duty upon the part of agents of such* Association, but rather the member must sue the agents as individuals."

Local Union 100 limited its plea in abatement to the contention that the matters of which "plaintiff complains" are matters within the exclusive jurisdiction of the National Labor Relations Board pursuant to the Federal Labor Management Relations Act of 1947 (Taft-Hartley), which statute provides in pertinent part that it is an unfair labor practice for a labor organization or its agents "(1) to restrain or coerce (A) employees in the exercise of the rights guaranteed in Section 157 of this title: PROVIDED, That this paragraph shall not impair the right of a labor organization to prescribe its own rules with respect to the acquisition or retention of membership therein * * *; (2) to cause or attempt to cause an employer to discriminate against an employee in violation of subsection (a) (3) * * * ." Labor union's pleading continues: "The cited Federal legislation preempts the field and deprives this Honorable Court of the State of Texas of jurisdiction to hear and determine the matters alleged in plaintiff's petition for the reason that exclusive jurisdiction of said matters are by federal statute, lodged in the federal administrative agency and the federal court, and plaintiff has wholly failed to seek, utilize, or exhaust remedies available before the federal agency and federal court under the federal law."

No evidence was introduced at the hearing on the pleas in abatement which began on November 30, 1956, and ended on February 15, 1957, when the trial court entered its judgment and order sustaining both pleas in abatement, reciting in the order "* * * and it appearing to the court that plaintiff is a member of the defendant organizations and thus has no standing to sue said organizations for money damages; and it further appearing that jurisdiction of a suit by an employee to recover

for union interference with employment, or discrimination in employment opportunity, is within the exclusive jurisdiction of the National Labor Relations Board under the Federal Labor Management Relations Act, and accordingly this court is without jurisdiction."

On appeal, the Court of Civil Appeals reversed both holding of the trial court, and remanded the cause for trial. 316 S.W. 2d 458.

The jurisdictional question, supra, is not before this Court. The two points presented here are: (1) that a member of a voluntary unincorporated union has no right to recover money damages from the association of which he is a member for the dereliction of duty of the joint agent of the association members; (2) that the Court of Civil Appeals lacked jurisdiction by reason of Borden's failure to perfect his appeal by timely filing an appeal bond.

I dispose of the questions in reverse order. The bond filed within the 30-day period provided by Rule 356, Texas Rules of Civil Procedure, even though defective, conferred jurisdiction, and since the Court of Civil Appeals granted permission and Borden filed an amended bond, that court had jurisdiction of the appeal. See Rule 430, T.R.C.P.; Pillow v. McLean, 126 Texas 349, 88 S.W. 2d 702 (1935); Williams v. Wiley, 96 Texas 148, 71 S.W. 12 (1902); Grogan Manufacturing Company v. Lane, 140 Texas 507, 169 S.W. 2d 141 (1943); Lusher v. First National Bank of Fort Worth, Texas Civ. App., 260 S.W. 2d 621 (1953), er. ref. n.r.e.

This brings me to the first point. I have heretofore pointed out that the labor unions contend that the question is controlled by the rule announced in the case of Brotherhood of Railroad Trainmen v. Allen, supra.

In order to be certain as to the pleadings, facts, and issues involved in the Allen case, the Clerk of this Court secured from the Clerk of the Court of Civil Appeals at Waco, Texas, the original record in that case. The transcript reveals that the case originally began as a suit against the Texas and New Orleans Railroad Company and the Brotherhood of Railroad Trainmen charging a conspiracy between the railroad and the Brotherhood, and further charging fraud. The pleadings in the alternative charged negligence in certain particulars on the part of the Brotherhood alone. At the close of the evidence, the railroad was

dismissed from the case and the issue of fraud thereby went out of the case. Thereupon, 14 special issues were submitted to the jury. Thirteen of these issues were concerned with certain acts of alleged negligence and discrimination on the part of the Brotherhood. The Brotherhood was found guilty of several acts of negligence, and the jury found that each act was a proximate cause, etc. Special Issue No. 12 was conditionally submitted upon a "yes" answer to either Special Issue 1a or 1c. Those issues read as follows:

"Special Issue 1a: Do you find from a preponderance of the evidence that the Brotherhood of Railroad Trainmen, through its representative or representatives, designated persons other than available yard crews that would have been called to perform the work to receive payment under the awards involved herein?" Answer "Yes" or "No." Answer "Yes."

"Special Issue No. 1c: Do you find from a preponderance of the evidence that the Brotherhood of Railroad Trainmen, through its representative or representatives, agreed to the designation of persons other than available yard crews that would have been called to perform the work to receive payment under the awards involved herein?" Answer "Yes" or "No." Answer "Yes."

Special Issue No. 12 reads:

"Do you find from a preponderance of the evidence that the Brotherhood of Railroad Trainmen, in so designating or agreeing to such designation, if you have so found, (Special Issues 1a or 1c), practiced a fraud upon plaintiffs, or either of them?" Answer "Yes."

It is necessary to state the factual background, as reflected in the statement of facts in the record of the Allen case. After the dismissal of the issues of fraud, the Court was only concerned with the following pertinent facts bearing on negligence. Certain employees, (yard men) of the railroad, who were also members of a Railroad Brotherhood, charged that the Brotherhood had negligently paid certain sums of money to the regular railroad crew in violation of the contract between plaintiff-employees and the Brotherhood. It was claimed that certain services within the Dallas yard, such as "picking up" cars, "setting out" cars, handling road engines, and turning engines and trains, under the contract between plaintiff-employees and the Brotherhood, were to be performed by the yard men and not

the road crew. The plaintiff-employees alleged that the Brotherhood, a voluntary association, was, and had been for many years, the collective bargaining agent of the yard employees (plaintiffs), and under the terms of its membership contract with plaintiffs was obligated to represent them without discrimination in all disputes with the railroad. The plaintiffs' charge that the Brotherhood acted discriminatorily is found in the allegation that the Brotherhood, in distributing the funds involved, caused "some" employees to get larger shares of the $60,616.20 than they were entitled to and caused plaintiffs to get far less than the amounts to which they were entitled and therefore the Brotherhood wrongfully deprived plaintiffs of the sums of which they were entitled." Plaintiffs sought judgment against the Brotherhood for all sums due under the contract dated March 1, 1946, between the Railroad and the Brotherhood (acting for plaintiffs-yard men). The railroad was dismissed from the suit. The Court of Civil Appeals in its opinion in the Allen case states that A. L. Weiss and Doyle Andrew were the agents and representatives of plaintiffs as well as all other members of the Union; that Weiss selected Andrews to check the records; that Andrews did check the records; Weiss was present part of the time. After the check was made certain members were designated and certified to the railroad as being entitled to receive the funds; that the plaintiffs, as appellees, were contending that had all of the available records been checked, it would have been ascertained that the extra men and not the road crew would have been entitled to receive most if not all the money paid by the railroad under the awards.

Although the fraud issue was submitted, it is clear that when the case reached the Court of Civil Appeals for decision and when that court finally rendered its judgment, the dismissal of the railroad company from the suit effectively eliminated all issues of conspiracy and fraud and the Court of Civil Appeals decided only the narrow question relative to the charged acts of negligence on the part of the agents of the Brotherhood.

The Brotherhood's points, which were the only points considered and sustained in the Allen case were as follows:

## "POINT TEN

"Since the plaintiffs are members in good standing of the Brotherhood, which is a fraternal benefit association and labor union bargaining for the craft in the employment in which plaintiffs were engaged, plaintiffs cannot sue the Brotherhood for the acts of any Brotherhood agent, even though said acts

were negligence, since the agents of the Brotherhood, being also members of the Brotherhood, are agents of the plaintiffs and each of them, and the Brotherhood is not liable to any member for the negligent acts of another member thereof."

## "POINT ELEVEN

"Each of the plaintiffs being a member in good standing of the Brotherhood, which is an unincorporated fraternal benefit association, as well as labor union, cannot sue the Brotherhood for the negligence of a brother member alleging that said member was a negligent agent of the Brotherhood, and since the agent is also the agent of the plaintiffs, even though the agent's act was negligent, if any one was liable to plaintiff's, it would be the agent and not the Brotherhood. Therefore the trial court erred in submitting issues of negligence of the Brotherhood to the jury and in failing to sustain defendant's motions for instructed verdict and defendant's motion for judgment non obstante veredicto."

This being the state of the record, the Court of Civil Appeals held, in effect, that the agents, Weiss and Andrews, were joint agents of plaintiffs and the Unions and all other members of the Union, and that under such circumstances, the plaintiffs had no cause of action against their coprincipals for the dereliction of common agents, citing Hromek v. Gemeinde (1941) 238 Wis. 204, 298 N.W. 587, and other cases. In the Hromek case, supra, it was held that no liability on the part of an unincorporated labor union existed in favor of a member who in a hall rented by the Union for purposes of its meeting, tripped over a platform negligently placed in the room by the officers of the Union and received injuries. The Court rested its decision on the ground that the officers of the Union were not only acting for the Union and all the other members but also for the plaintiff, and that plaintiff could not sue her coprincipals for the dereliction of a common agent. See 14 A.L.R. 2d 475.

In the case of Koogler et al v. Koogler, (1933) 127 Ohio St. 57, 186 N.E. 725, another case cited by the Court in the Allen case, the trustees of an unincorporated beneficial association were held not liable in damages to a member of the association for personal injuries sustained by him as a result of the falling of a fire-escape ladder on the sidewalk by the breaking of its suspending cable when he was walking on the sidewalk preliminary to replacing a glass on a broken window for the association. The ground of the decision was that since members

of an unincorporated beneficial association are joint enterprisers, the tort of the association is the tort of all the members, including the plaintiff himself, and the plaintiff cannot sue himself for a tort committed by himself. The Court, however, in this latter case where the right of a member of an unincorporated association for injuries as the result of the negligence of the association was involved, distinguished such case from those cited by the plaintiff on the ground that in some of the cited cases the defendant was a corporate entity, in others a contractual relation was involved, in others the party suing had not as yet become a member, in others action for expulsion was involved, and in still others the party suing had ceased to be a member. In this case, as well as in the Allen case, the Court, in distinguishing the cases, recognized the right of a member of a voluntary association to be protected in the enjoyment of membership against any unauthorized act or proceeding on the part of his fellow members, either as individuals or in their official or collective capacity, by which his enjoyment of such right would be impaired or destroyed.

The application for writ of error in the Allen case was refused. The Brotherhood stated in its reply to the application for writ of error that "neither seniority rights, expulsion, nor the rights of members to work and earn a living are questioned in this case." The effect of this argument is to, in a measure, admit that if expulsion or the right to work and make a living had been involved, the plaintiffs' contention would have been correct. The Allen case stands for the proposition and its effect should be limited to instances where the union member bringing the action is equally responsible for the dereliction of the union representatives. The Allen case was fully developed and a complete trial of the issues was allowed, whereas, our Borden case went off on a plea in abatement. Borden has never had his day in court. The Brotherhood in the Allen case was in a position to discuss the constitution and bylaws of the association. Such instruments were introduced in evidence. Not so here. They were able to show that the members were seeking to invoke the rights of the Brotherhood to be free from destructive suits where no cause of action really existed.

The other Texas case relied upon by petitioners is that of Atkinson v. Thompson, Texas Civ. App., 311 S.W. 2d 250 (1958), er. ref. n.r.e. July 9, 1958. The Court of Civil Appeals, in holding that the plea in abatement was properly sustained, cited the Allen case in support of such holding. The pleadings

and the facts were different than those finally passed upon in the Allen case. Atkinson pleaded, in the alternative, that the "Brotherhood actually instigated his discharge and said denial of his rights of seniority, and conspired with Guy A. Thompson, Trustee, to deprive him of his rights of seniority, all to his damage in the amount of $7,000."

The railroad and the Brotherhood each filed a plea in abatement. The trial court sustained such pleas and the Court of Civil Appeals affirmed. The opinion of the Court of Civil Appeals contains language which may be interpreted as supporting the petitioners' position in the present case. The opinion, to the extent that it expresses holdings contrary to the holding by the majority and in this concurring opinion, should be expressly overruled. This should be done even though refusal of the writ, n.r.e. could be justified because of failure of the petitioners to properly preserve the point in this Court. Atkinson's pleadings of conspiracy and fraud, and the nature of the two pleas in abatement are set out in the opinion. The Court of Civil Appeals made its holding that "the real reason appellant cannot sue for the wrongful act of the agent of the Brotherhood is that as a member of the Brotherhood he is jointly responsible with all other members for the actions of the group itself, and accordingly as a principal he has no cause of action against coprincipals for the wrongful conduct of a common agent," in the light of Atkinson's pleadings. The court, in construing the Allen case, states that the railroad was dismissed, but it gives no effect to the fact that the dismissal also eliminated all issues as to wrongful participation in or ratifiication of the intentional wrong knowingly committed by one of the agents of the Brotherhood. For the reasons stated, I would not overrule the Allen case, but would overrule the Atkinson case.

The petitioners also rely upon the case of Marchitto v. Central Ry. Co. of N.J., 88 A. 851. It is clear from the opinion that in answering the question: "Did the complaint state a cause of action against the defendants," the Supreme Court of New Jersey, speaking through Chief Justice Vanderbilt, confined its holding to the issues, as made by the pleadings, between the plaintiff on the one hand and the Brotherhood and its agent, Giles, on the other. The court held no cause of action had been stated against the Brotherhood, but that as against Giles, the pleadings stated a cause of action. The cause of action against the railroad was ordered stricken by the trial court. Subsequent to this action, the trial court sustained the contention of the Brotherhood and Giles that the complaint (plaintiff's pleadings)

failed to state a cause of action. It appears from the opinion that the court simply held that the Brotherhood was an unincorporated fraternal association; that it was not a separate legal entitly and had no existence apart from that of its individual members; that in legal effect the plaintiff and every other member of the Brotherhood are co-principals joined together in a joint enterprise to accomplish a common purpose with their relationships to each other and to the group being governed by the Association's constitution and the bylaws or rules adopted pursuant thereto, and by the common law, and as a member of the group the plaintiff was jointly responsible with all other members for the actions of the group itself, and as a principal he had no cause of action against his co-principals for the wrongful conduct of their common agent. It cannot be successfully argued that the holding thus announced can be extended so as to control the decision in the present suit. The court apparently adopted the theory that the Brotherhood defendants were not in fact and in law the plaintiff's agents. The court said:

"* * * It is universally recognized that an agent stands in a fiduciary relationship to his principal and is under a duty to be careful, skillful, diligent and loyal in the performance of his principal's business and that for a failure so to act he subjects himself to liability to his principal, 2 Am. Jur. Agency, sections 251, 252, 274; 3 C.J.S., Agency, sections 138, 155, 162, 172, 286; 2 Restatement, Agency, sections 379, 387, 399. Since the complaint here charged these defendants with negligence, carelessness, fraud and breach of trust and made appropriate allegations of fact in support thereof, it necessarily follows that a good cause of action was pleaded, if these defendants were in fact and in law his agents."

It does not appear that a conspiracy had been entered into between the railroad and Brotherhood, as alleged in the present case, to deprive the plaintiff of the right to work or that the Brotherhood participated in a wrongful act against the plaintiff.

The case of Frederick Duplis v. Rutland, Aerie No. 1001, Fraternal Order of Eagles, 118 Vt. 440, 111 A. 2d 727 (1955), relied upon by petitioners, was an action in tort to recover damages for injuries suffered by the plaintiff, a member of the defendant, Fraternal Order of Eagles. The injuries were sustained when the plaintiff tripped and fell on the stairway while leaving the defendant's premises. The court in upholding the

action of the trial court in sustaining defendant's general demurrer to plaintiff's petition, held, in effect, that the plaintiff, having admitted in his pleadings and in oral argument that the defendant was an unincorporated association and that at all material times the officers and agents were co-members with the plaintiff, that the trial court properly sustained the contention that the alleged acts of negligence of the agents were imputed to all members, including plaintiff, thereby precluding a recovery.

The facts as revealed by the pleadings in the present case bring it within the rule announced in cases where membership in a voluntary association has once been acquired, protection against expulsion or the deprivation of the right to work will be afforded by the courts. See Lundine v. McKinney, Texas Civ. App., 183 S.W. 2d 265, no writ history; Dingwall v. Amalgamated Association, etc., 4 Calif. App. 565, 88 P. 597; 3 California Jurisprudence, 350, par. 5; Taxicab Drivers Local v. Pittman, (Okla. S. Ct. 1957), 322 P. 2d 159, 41 L.R.R.M. 2045; Selles v. Local 174 of International Brotherhood of Teamsters, etc., (Washington S. Ct. 1957), 50 W. 2d 660, 314 P. 2d 456, 40 L.R.R.M. 2573.

Since no evidence was presented at the hearing on the plea in abatement, the allegations contained in Borden's pleadings must be taken as true. The pleadings show that Borden was as effectively deprived of the right to work on the Republic National Bank job as if he had been expelled from membership. The fact that he worked on other jobs does not change the situation. The Constitution and Bylaws of the Association were not introduced in evidence. However, we must assume, in the light of the pleadings, that Borden, in gaining membership, did not contract and agree to be bound by acts which would deprive him of the right to work. As was held in the Dingwall case, supra, "* * * Membership in a social or beneficial association is in itself a personal right, especially when the purposes of the association include the amelioration or improvement of the condition under which the members obtain their livelihood, and the holder of such right is entitled to be protected in its enjoyment against any unauthorized act or proceeding on the part of his fellow members, either as individuals or in their official or collective capacity, by which his enjoyment of such right will be impaired or destroyed."

It cannot be successfully said that the agents of the labor unions in depriving Borden of the right to work on the Republic

National Bank job were acting as agents on behalf of Borden. On the other hand, it should be noted that in the Allen case, supra, the agent was acting in the performance of his duty on behalf of the plaintiffs in such manner that the plaintiffs could reasonably expect to benefit just as much as any other member. At the inception of the controversy, the matter in dispute was left to the agent. That agent was acting in behalf of the plaintiffs. Here we have, as pointed out above, quite a different situation. One of the "essential ingredients is that the act complained of should be done by the agent on behalf of the complaining member." See Bonson v. Musicians' Union (1955 House of Lords), 3 W.L.R. 788, 3 All E.R. 518; Taxicab Drivers Local v. Pittman, supra.

The agents of the union in the present case were not Borden's agents for the purpose of denying him the right to work on the Republic National Bank job. In the Pittman case, supra, the Court said: "Common sense leads inexorably to the conclusion that officers of the Union causing plaintiff to be suspended from work without pay are anything but his agent for that purpose. The contrary conclusion would smack of flagellantism, an unlikely theory upon which to determine legal liabilities. The use of the agency doctrine under these specific circumstances has no support either in reason or public policy." The reasoning in the Pittman case applies with equal force here.

This case has not been decided on its merits. The majority recognizes this fact, but proceeds to instruct the trial court how it should rule in the event it should appear that the denial to respondent of an opportunity to work on the Republic Bank Building, even though wrongful, resulted merely from negligence, et cetera. It is sufficient for this Court to confine its opinion to the questions presented as the result of the error of the trial court in sustaining the plea in abatement.

The respondent is entitled to a trial, and it will be for the trial court to direct that trial. I join in affirming the judkment of the Court of Civil Appeals.

Opinion delivered November 4, 1959.

MR. JUSTICE GREENHILL, dissenting.

I respectfully dissent. This is not a suit against the business agent who mistreated Borden. In my opinion, the legal principles here involved as to the Union are controlled by *Brotherhood of Railway Trainmen v. Allen* (1950), 230 S.W. 2d 325,

writ refused, and *Atkinson v. Thompson* (1958), 311 S.W .2d 250, writ refused N.R.E., which follows the *Allen* case.

Opinion delivered November 4, 1959.